J-S66027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAY RAYMOND LANDIS | : | |
| | : | |
| Appellant | : | No. 257 EDA 2018 |

Appeal from the Judgment of Sentence June 6, 2017
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0000973-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.:                **FILED APRIL 10, 2019**

In this companion appeal to ***Commonwealth v. Landis***, No. 4093 EDA 2017, Jay Raymond Landis appeals from the judgment of sentence imposed following his jury conviction of one count of simple assault;[1] and guilty but mentally ill of the following offenses: terroristic threats,[2] a second count of simple assault, false imprisonment[3] and harassment.[4, 5]  He challenges the

_____

[1] 18 Pa.C.S.A. § 2701.

[2] 18 Pa.C.S.A. § 2706(a)(1).

[3] 18 Pa.C.S.A. § 2903(a).

[4] 18 Pa.C.S.A. § 2709(a)(4).

[5] The jury also convicted Appellant of recklessly endangering another person ("REAP").  However, the trial court vacated that conviction after Appellant

sufficiency of the evidence for certain convictions, and, in the alternative, the weight of the evidence.[6]  We affirm.

Initially, we must address our jurisdiction to entertain this appeal. It is well-settled that:

> Time limitations for taking appeals are strictly construed and cannot be extended as a matter of grace.  This Court can raise the matter *sua sponte,* as the issue is one of jurisdiction to entertain the appeal.  Absent extraordinary circumstances, this Court has no jurisdiction to entertain an untimely appeal.

***Commonwealth v. Burks****,* 102 A.3d 497, 500 (Pa.Super.2014) (citations omitted).

Appellant filed his post-sentence motion on June 15, 2017. The trial court granted a 30-day extension to decide the motion, extending the deadline to Monday, November 11, 2017. ***See*** Pa.R.Crim.P. 720(B)(3). Therefore, the court's order granting the motion in part, filed on November 11, 2017, was timely.

However, the Commonwealth then filed an untimely request for reconsideration on November 20, 2017. ***See*** Pa.R.Crim.P. 720, *Comment*

_____

challenged the sufficiency of the evidence for it in a post-sentence motion. The trial court ultimately denied the Commonwealth's motion for reconsideration.  The Commonwealth chose not to pursue this issue on appeal. ***See*** Commonwealth's Brief, at 6.  Therefore, the vacation of the conviction for REAP is not at issue in this appeal.

[6] We note that on appeal Appellant has chosen to abandon his challenges to the sufficiency of the evidence for harassment and false imprisonment. ***See*** Appellant's Brief, at 4.

("The trial judge's reconsideration must therefore be resolved within the 120-day decision period … or the 30-day extension period … whichever applies"). The Commonwealth's motion should have been denied as a matter of law; it was not. Instead, the court scheduled argument on the Commonwealth's motion for December 18, 2017. After hearing argument, the court denied reconsideration on that same day.

Appellant filed his first notice of appeal on December 12, 2017, indicating he was uncertain as to the status of his appellate rights under these circumstances. **See** Notice of Appeal, 12/12/17. Counsel filed this, his second notice of appeal, on January 17, 2018.

While the Commonwealth's motion should have been denied as a matter of law, the clerk of courts did not file and serve such an order upon the parties, as required under Pa.R.Crim.P. 720(B)(4), *Comment*. This constitutes a breakdown in the operations of the trial court. ***See Commonwealth v. Perry***, 820 A.2d 734, 735 (Pa. Super. 2003). Since Appellant's second notice of appeal was filed within 30 days of the order denying the Commonwealth's motion for reconsideration, we will not quash this appeal as untimely.

The trial court summarized the following findings of fact:

At approximately 2:00 a.m. on January 29, 2014, troopers from the Pennsylvania State Police ["PSP"] responded to a call of a domestic disturbance at 1024 Standard Lane, Coopersburg, Pennsylvania ("Landis Residence"). The complainant, Jody Mauzey, lived at the home with her boyfriend, [Appellant] Jay Landis, and their then three -year –old son. Earlier that day, the couple had guests over and everyone had been drinking.

En route, troopers received additional information that [Appellant] was armed, and that the female complainant and child fled to a neighbor's house. Once on scene the troopers decided to form a perimeter around the house. It was also decided that spike strips would be placed across the driveway to prevent [Appellant] from leaving. As troopers were about to deploy the spike strips, they heard a single gunshot come from the Landis Residence.

Contact was made with [Appellant] via telephone, but [Appellant] refused to exit the home. Troopers decided to shut down both ends of Standard Lane to prevent civilian cars from coming near the Landis Residence. However, before they could do that, [Appellant's] parents arrived in a vehicle and drove towards the Landis Residence. A trooper attempted to stop the vehicle by waving his hands, but the car did not slow down and drove into the Landis driveway and over the spike strips. [Appellant's] father exited the vehicle and spoke with [Appellant] through a window, convincing him to come out of the house.

[Appellant] exited in an aggressive manner and would not [ ] listen to the troopers' commands. He was taken into custody at approximately 3:05 a.m. [Appellant] was exhibiting signs of intoxication; and during the ride back to the PSP barracks, he made gratuitous statements that he was trained as a military sniper and that the troopers were lucky his parents arrived. He also questioned the troopers regarding their body armor. Once at the barracks, [Appellant] continued to be belligerent and yelled at troopers that it was his house and he could fire his gun if he wanted to.

Meanwhile, Trooper Patrick Dawe spoke with Ms. Mauzey at the neighbor's house. Mauzey appeared disheveled, her right cheek was bruised, and her left knee was bloody. Mauzey agreed to give a written statement. In the statement, she indicated [Appellant] was drunk and punched her while she was walking up the stairs, causing her to fall. She [stated] she went to bed, and was awoken by [Appellant] yelling. [Appellant] then pulled her out of bed to the living room and threw her on the floor. He went to the basement and returned with a handgun, which he was [waving] around and threatening her with. Mauzey eventually armed herself, locked herself and her son in the son's bedroom, and ultimately escaped out a second -floor window and went to a neighbor's house. During this altercation, Mauzey was able to call 911.

Inside the Landis Residence, the troopers recovered an AR-15 pistol. They also observed loaded magazines on some windowsills in the residence. At least one magazine contained green-tipped bullets, which is usually indicative of body armor-piercing bullets.

At trial, [Appellant] presented the expert testimony of Dr. Larry Rotenberg, a forensic psychiatrist. Dr. Rotenberg opined [Appellant] suffered from Post–Traumatic Stress Disorder ("PTSD") related to combat duty in Iraq, and met the M'Naghten Standard for being not guilty by reason of insanity. In rebuttal, the Commonwealth presented the expert testimony of Dr. John O'Brien, also a forensic psychiatrist, who opined [Appellant] did not have a mental health defense.

Trial Court Opinion, 2/15/18, at 1-3.

More specifically, Dr. O'Brien testified to a reasonable degree of psychiatric certainty that Appellant was voluntarily intoxicated because of his drinking at the time of the offenses, but he appreciated the difference between right and wrong, and therefore was not legally insane. *See* N.T. Trial, 4/27/17, at 233.

At trial, Mauzey's testimony about the incident varied materially from the written statement she had given to the state trooper on the night it occurred. The trial court noted:

Ms. Mauzey's trial testimony [ ] differed from her written statement given to police soon after the incident. Her written statement indicated the defendant punched her; in court, she testified he pushed her. Her written statement indicated [Appellant] grabbed her, threw her to the ground and threatened her; in court, she testified [Appellant] did not force her out of bed or throw her down. She also testified that she could not say whether or not he had a gun.

Trial Court Opinion, at 5.

- 5 -

At trial, Mauzey agreed with the prosecutor that she had tried to draft her written statement as truthfully as she could, but claimed she was not thinking clearly, when she wrote it down after just being awakened around 3:45 a.m., after the incident. *See* N.T. Trial, 4/26/17, at 28. However, her statements to the state trooper, several 911 dispatchers, and the intake nurse at the hospital largely corroborated her written statement. Confronted with the discrepancies in her testimony at trial, Ms. Mauzey claimed to have forgotten the details of what happened three and a half years before. *See id.* at 31. She acknowledged that she had reconciled with Appellant and had resumed living together with him a few months after the incident. *See id.* at 39.

The jury convicted Appellant of the offenses previously noted. The court imposed a sentence of time served, up to a maximum of one year in county jail, with immediate parole.[7] As a condition of supervision, the court also directed Appellant to undergo psychiatric and psychological evaluation, counseling and treatment with the Veterans Administration for drug and alcohol consumption, and anger management.

_____

[7] It bears noting that the trial court explained that its mitigated range sentence was in express recognition of Appellant's honorable military combat service (eight months in Iraq in 2003), his severe alcohol issues and mental health diagnosis, his pursuit of treatment, and related considerations. *See* Sentencing Order, 6/06/17, "Special Provisions."

Appellant filed a post-sentence motion, challenging the weight and the sufficiency of the evidence. As already noted, the court vacated the REAP conviction and sentence for insufficient evidence. In all other respects, the court denied the post-sentence motion. The Commonwealth filed for reconsideration of the order vacating the REAP conviction. After a hearing, the trial court denied the Commonwealth's motion. This timely appeal followed.[8] Both Appellant and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925.

Appellant presents four issues for our review, framed as three questions, which we reproduce verbatim except for bracketed insertions:

> 1. Whether the evidence was insufficient to convict the Appellant in that:
>
> a. Jody Mauzey testified that Appellant did not intend to hurt her and did not [hurt] her as he only pushed her. Because of this, there was insufficient evidence to support a simple assault conviction.
>
> b. The Appellant's conduct did not amount to terroristic threats as it failed to show the requisite *mens rea*. According to her testimony, Appellant never directly threatened to hurt Jody Mauzey. Appellant was "clearing rooms" in the house. Additionally, Appellant's behavior was more consistent with a short term angry outburst than a terroristic threat.

---

[8] Despite counsel for Appellant's conceded confusion about which order was properly appealable, (resulting in the filing of duplicate notices of appeal, and duplicate appeals), Appellant correctly filed a timely notice of appeal to the judgment of sentence as finalized by the order denying reconsideration of the order granting in part and denying in part Appellant's post-sentence motion. Accordingly, Appellant's (second) appeal is timely. **See** Pa.R.A.P. 1701(b)(3).

2. Whether the evidence was insufficient to find the Appellant guilty but mentally ill where neither expert testified and neither party argued that the evidence supported a guilty but mentally ill [verdict]?

3. In the alternative to 1 and 2, whether the verdicts were against the weight of the evidence in that the Appellant's expert was substantially more credible than the Commonwealth's expert and neither expert provided evidence in support of a verdict of "guilty but mentally ill"?

Appellant's Brief, at 4.

Our standard of review for a challenge to the sufficiency of the evidence is well-settled.

[O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Hecker***, 153 A.3d 1005, 1008 (Pa. Super. 2016) (brackets in original; citation omitted).

"Our standard of review is *de novo*, and our scope of review is plenary, because[ ] a claim challenging the sufficiency of the evidence is a question of law[.]" ***Commonwealth v. Neysmith***, 192 A.3d 184, 189 (Pa. Super. 2018) (citations omitted). "Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Jones***, 886 A.2d 689, 704 (Pa. Super. 2005) (brackets in original; citation omitted).

In his first claim on appeal, Appellant challenges the sufficiency of the evidence for simple assault. He maintains that "a punch or a push without a resulting injury or without force that demonstrates an intent to cause injury" is only harassment and "does not rise to the level of simple assault." Appellant's Brief, at 13. We disagree.

Our Crimes Code defines the offense of simple assault in relevant part as follows:

> **(a) Offense defined.–** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>
> (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1).

In this case, the trial court decided that the jury could have concluded that Appellant attempted to hurt Mauzey either by punching or by pushing her on the stairs. *See* Trial Court Opinion, 2/15/18, at 5. We agree.

Even accepting Appellant's argument at face value, he is entitled to no relief. Pushing Mauzey down a set of stairs is sufficient to allow a jury to infer that Appellant acted at least recklessly. Further, the injuries to Mauzey's cheek and knee are sufficient to support a finding of bodily injury.

Moreover, "[t]he existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury." *Commonwealth v. Ogin*, 540 A.2d 549, 552 (Pa. Super. 1988) (citation omitted). Appellant's challenge to the sufficiency of the evidence for simple assault does not merit relief.

Next, Appellant claims that the Commonwealth failed to prove *mens rea* for the offense of terroristic threats. *See* Appellant's Brief, at 13-15. He asserts that his actions constituted no more than a short-term angry outburst. We disagree.

> It is hornbook law that *mens rea* is the state of mind a defendant must possess to commit a crime. The term *mens rea* is Latin for guilty mind and is defined as [t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime[.] Black's Law Dictionary, (3rd Pocket ed. 2006).

*Commonwealth v. Andre*, 17 A.3d 951, 958 (Pa. Super. 2011) (internal quotation marks omitted).

The Crimes Code defines terroristic threats, in pertinent part, as follows:

- 10 -

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]"

18 Pa.C.S.A. § 2706(a)(1).

"In determining whether appellant made the threats with the requisite intent, we must view the evidence in the light most favorable to the Commonwealth as verdict winner and may view the facts and circumstances under which those threats were made." *Commonwealth v. Ashford*, 407 A.2d 1328, 1330 (Pa. Super. 1979) (internal citations and quotation marks omitted).

In this appeal, Appellant relies chiefly on Mauzey's trial testimony. Her trial testimony, which denied several aggravating factors, was considerably more favorable to Appellant than her written statement and the other evidence. Therefore, Appellant disregards our standard of review, which examines the evidence in the light most favorable to the Commonwealth. For example, Mauzey's statement indicated that Appellant pulled her out of bed and told her to stay in the living room. Appellant left the living room and returned with a gun. Appellant was "threatening" Mauzey, "grabbed" her, and threw her to the ground. N.T., 4/26/17, at 30. The jury was entitled to infer that Appellant acted with the requisite *mens rea* to convict him of terroristic threats.

Appellant also suggests his threats were spur-of-the-moment, and resulted from mere anger, citing *Commonwealth v. Anneski*, 525 A.2d 373,

376 (Pa. Super. 1987). **See** Appellant's brief, at 14. Again, however, Appellant fails to develop this claim. **See id.**; **see also** Pa.R.A.P. 2119(a) (requiring that each point raised shall be followed by such discussion and citation of authorities as are deemed pertinent.).

"We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." **Commonwealth v. Cannavo**, 199 A.3d 1282, 1289 (Pa. Super. 2018), *reargument denied* (Jan. 29, 2019) (citations omitted). Appellant's mere bald citation of case authority fails to provide this Court with any meaningful application of such authority to the relevant facts. **See id.** "As we will not make Appellant's arguments for him, we deem this claim waived." **Id.**

Moreover, "[E]ven a single verbal threat might be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce." **Ashford,** 407 A.2d at 1329 (citation omitted).

Appellant's reliance on **Anneski**, besides being undeveloped, would merit no relief, as the case is readily distinguishable. Anneski made her admitted threats in an argument with a neighbor, in a right of way dispute, apparently prompted by the neighbor's threat to injure Anneski's children. **See id.** at 375.

Here, Appellant fails to point to any evidence that his purported spur of the moment anger was similarly prompted by any external provocation.

Instead, Appellant argues that he "was in a serious mental health state at the time of the incident." Appellant's Brief, at 15. However, Appellant merely assumes, but fails to substantiate, this assertion, and fails to develop an argument in support of it. *See id.* Accordingly, it is waived for the purposes of this claim.

Furthermore, Appellant omits mention of the evidence that he was observed to be heavily intoxicated. We note that it is well-settled that voluntary intoxication is not a defense to a criminal charge. *See Commonwealth v. Ellis*, 581 A.2d 595, 604–05 (Pa. Super. 1990) (noting exception for charge of murder); *see also* 18 Pa.C.S.A. § 308 (neither voluntary intoxication nor voluntary drugged condition is defense to criminal charge, except to reduce degree of murder).

The evidence of record confirms that Appellant punched or pushed Mauzey down to the ground, (actually the stairs), pointed a gun at her and threatened to kill her. *See* Trial Court Opinion, at 6. When the state police arrived, after several 911 calls by Mauzey, Appellant fired a shot. By then Mauzey had escaped to a neighbor's house, with her three year-old son, who witnessed much of the earlier proceedings. The entire episode appears to have lasted several hours, from some time after 9 p.m. to shortly before 3 a.m.

Viewing the entire record in the light most favorable to the Commonwealth as verdict winner, we have no hesitation in concluding that

there was more than sufficient evidence to support Appellant's conviction for terroristic threats. This was not a mere short-term angry outburst. Appellant's claim fails.

In his third claim, (labeled as "Question 2"), Appellant challenges generally the sufficiency of the evidence for his multiple convictions as "guilty but mentally ill." *See* Appellant's Brief, at 4, 15-18. We disagree.

Preliminarily, Appellant cites, but otherwise disregards, section 314 of the Crimes Code, which expressly provides for such a verdict.

> **General rule.—**A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

18 Pa.C.S.A. § 314(a).

Although Appellant nominally claims the verdicts were not supported by the evidence, his chief complaint appears to be that the jury convicted him even though neither expert advocated a guilty-but-mentally-ill verdict. *See* Appellant's brief, at 16. Appellant concedes that the trial court gave the jury an instruction on the guilty but mentally ill verdict. *See id*., at 17. Appellant fails to explain what element of the offenses, if any, the Commonwealth failed to prove. Appellant concedes there is no caselaw in support of his claim. *See id*.

The jury was free to reject the claim of legal insanity (essentially, the inability to distinguish right from wrong), but accept evidence of his mental

health issues. Section 314 authorizes such a verdict. "Indeed, unless a person pleads guilty but mentally ill, the guilty but mentally ill verdict only arises in the context of a legal insanity defense." *Andre*, 17 A.3d at 961 (Pa. Super. 2011). Appellant's third argument is unsupported by either the applicable law or the facts. Appellant's third claims fails.

Finally, in his fourth claim, Appellant challenges the weight of the evidence. Our standard of review is well-settled.

> [A challenge to the weight of the evidence] concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Fisher*, 47 A.3d 155, 158 (Pa. Super. 2012) (brackets in original; citation omitted).

It was, of course, the province of the jury as fact-finder to weigh the evidence and accept all, part, or none of it, including the expert testimony of Dr. O'Brien, the Commonwealth's expert. *See Jones*, 886 A.2d at 704. Appellant maintains that the credibility of his expert, Dr. Rotenberg, was "far

- 15 -

stronger than the credibility of the Commonwealth's expert." Appellant's Brief, at 19. He never explains why.

To the contrary, Appellant insists, incorrectly, that the trial court never ruled on the weight claim. *See* Appellant's Brief, at 20. The record flatly contradicts the claim. *See* Order, 11/09/17 (denying post-sentence motions except for REAP); *see also* Trial Court Opinion, at 7 ("The jury . . . rendered a verdict consistent with the evidence presented"). Specifically, the trial court decided that the claim the jury should have given more weight to the opinion of Appellant's expert instead of the Commonwealth's expert was "meritless." Trial Court Opinion, at 7.

The trial court did not find that the verdict shocked its sense of justice. Neither do we. On independent review, we discern no proper basis on which to disturb the trial court's decision. The court did not abuse its discretion. Appellant's weight claim, as well as his insufficiency claims, does not merit relief.

Judgment of sentence affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/10/19</u>