J-S32029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DAVID STARLING, :
:
Appellant : No. 2008 EDA 2018

Appeal from the Judgment of Sentence Entered March 16, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000527-2016

BEFORE:  SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 04, 2019**

Appellant, David Starling, appeals from the judgment of sentence

entered on March 16, 2018, in the Philadelphia County Court of Common

Pleas.  After review, we affirm.

The trial court set forth the facts underlying Appellant's convictions as

follows:

[The victim,[1] S.S.,[2]] testified that in mid-2015, she went to
temporarily live with her aunt [D.S.] in Philadelphia. (N.T.
12/06/17 at pp. 31, 32, 35, 38, 41). Although she had nowhere

_____

[1] The victim was born in August of 1992.

[2] Although the victim's surname differs from Appellant's surname, in an effort
to protect the victim's identity, we refer to her and the familial witnesses using
initials or shortened versions of their first names.  ***See Commonwealth v.
S.M.***, 769 A.2d 542, 543 (Pa. Super. 2001) (referring to the victim by her
initials because she was a juvenile at the time of the offense); ***see also*** 18
Pa.C.S. § 3019(a) (protecting the identity of victims of sex crimes).

else to go, she was reluctant to live there because her older cousin [Appellant] resided there. (*Id.* at 41).

[S.S.] testified that, when they were children, [Appellant] would force her to perform oral sex on him, would make her touch his penis, and would touch her chest and vagina without her consent. (*Id.* at 41-42, 45). She would tell him to stop, but he did not. *(Id.* at 49). [S.S.] described these incidents; how "it felt weird" when [Appellant] put his hands on her, how [Appellant] would grab her head and move it back and forth when he forced her to perform oral sex on him, and how he would instruct her not to use her teeth on his penis. (*Id.* at 45-47). Finally, at the age of around 11 or 12, [S.S.] told [Appellant] that "enough is enough. This is weird. We're family. Stop." (*Id.* at 47-48). According to [S.S.], [Appellant] ignored her and kept trying to touch her and coerce her to touch him, but after a while he stopped. (*Id.* at 48).

[S.S.] testified that these incidents took place at her grandmother's house, her Aunt [Ca.'s] house, and more rarely, at her own house. (*Id.* at 44). When asked for an approximate number of times this occurred, [S.S.] testified first that it happened more than 100 times, then later testified that it happened closer to 1,000 [times]. (*Id.* at 44, 48). [S.S.] testified that she was between the ages of around three and around eleven or twelve when this happened, but her statement to the police specified that it was between the ages of four and eight. (*Id.* at 44).

The only person [S.S.] told during this time was her mother, but her mother—who struggled with schizophrenia, bipolar disorder, and drug addiction—called her "fast" and never did anything about it. (*Id.* at 49). Later, when [S.S.] was a teenager and living with her sister, [Sh.], [Appellant] tried to sleep over at [Sh.'s]; [S.S.] then told her sister about her history with [Appellant], and [Sh.] made [Appellant] leave. (*Id.* at 50-51).

[S.S.] testified that on the night of May 20, 2015, she was sleeping on her aunt's couch on the first floor. She admitted she had used marijuana less than twenty-four hours before this. (*Id.* at 137). [Appellant] slept upstairs and [S.S.] said she was sure to never fall asleep when he was in the same room because, although he was smaller than she was, she "didn't trust him." (*Id.* at 56, 112). [S.S.] testified that night she "woke up to the force of [Appellant] on me[.]" (*Id.* at 61). She had been sleeping on her

stomach and [Appellant] was now physically laying on top of her. (*Id.* at 68). She could not scream because she could barely breathe, but managed to tell him to get off her. (*Id.* at 69-70.) When she tried to fight him off, [Appellant] put his arm around her neck and started choking her with his arm or his hand. (*Id.* at 68, 143). She testified that she "absolutely" had never given [Appellant] consent to have sex with her that night. (*Id.* at 79). She testified that [Appellant] told her she was his first love, forced his knees between her legs, moved her boxers to the side, and began to penetrate her vaginally. (*Id.* at 62, 67, 68). [S.S.] testified that she struggled to escape, kept trying to fight him off, and soon "was able to get him off of me" and started screaming. (*Id.* at 68, 72).

[S.S.] and her brother [Sa.] both testified that at this point [Sa.] ran up from the basement. (*Id.* at 68, 72, 178). [Sa.] (who had been previously unaware of [Appellant's] prior assaults on [S.S.]) testified that he had been asleep in the basement when he heard his sister scream. (*Id.* at 176-78, 189, 193). Both testified that [S.S.], crying and angry, told [Sa.] that [Appellant] had just raped her. (*Id.* at 75, 178). They testified that [Appellant] ran upstairs and [Sa.] chased him, but was blocked by their [a]unt, who had appeared at the top of the stairs. (*Id.* at 62, 181). Both testified that at this point [S.S.] left the apartment (without her phone). (*Id.* at 76, 184). [Sa.] testified that he went looking for her but was unsuccessful. (*Id.* at 186). [S.S.] testified that she sat somewhere and watched the sunrise, before returning to retrieve her belongings. (*Id.* at 76). [S.S.] testified that her aunt then told [S.S.] that she had called the police, kicked [Appellant] out, and never would have let [Appellant] stay there "if she would have known." (*Id.* at 77, 108). [S.S.] then went to her sister's house and washed herself. (*Id.* at 78).

[S.S.], Officer Timothy McGinn, and Officer Carl Diaz all testified that on May 20, 2015, [S.S.] arrived at the 17th Police District Headquarters and reported that she was raped by her cousin the night before. (*Id.* at 4-6, 28, 31; N.T. 12/07/17 at pp. 31, 32, 35, 38, 41). Officer Diaz also testified that [S.S.] told him she had additionally been raped by [Appellant] multiple times when she was between the ages of four and eight. (N.T. 12/07/17 at p. 44).

It was stipulated that at 8:18 p.m., on May 20, 2015, a nurse "performed a rape kit on the victim and vaginal areas were swabbed, and subsequent analysis did not reveal any DNA of the [Appellant]." (*Id.* at 107). [S.S.'s] physical exam noted that she had no visible physical injuries at that time. (*Id.* at 139-140).

Finally, [S.S.'s] aunt [D.S.] testified that on November 21st or December 1st, 2017, she received a witness subpoena from the District Attorney stating that her attendance at trial was mandatory and asking her to contact the District Attorney to provide any information she might have. (*Id.* at 104). In response, [D.S.] left a voicemail with the District Attorney stating she did not want to speak to him or a detective. (*Id.* at 106).

Trial Court Opinion, 1/15/19, at 2-5.

Appellant was arrested and charged with rape, sexual assault, indecent assault, unlawful restraint, and simple assault.[3]  Criminal Information, 1/20/16.  At the conclusion of Appellant's trial on December 8, 2017, the jury found Appellant guilty of unlawful restraint.  Verdict, 12/8/17.  The jury found Appellant not guilty of rape and sexual assault, and a *nolle prosequi* was entered on the charges of indecent assault and simple assault.  **Id.**  On March 16, 2018, the trial court sentenced Appellant to a term of one to two years of incarceration, followed by three years of probation, for the conviction of unlawful restraint.  N.T., Sentencing, 3/16/18, at 16.  On March 22, 2018, Appellant filed a timely post-sentence motion that the trial court denied on

_____

[3] 18 Pa.C.S. §§ 3121(a)(1), 3124.1, 3126(a)(1), 2902(a)(1), and 2701(a) respectively.

June 1, 2018. This timely appeal followed. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues for this Court's consideration:

> I. Whether the court erred allowing evidence of Appellant's past sexual behavior toward Complainant into evidence.
>
> II. Whether the court erred in declining to grant a mistrial because of the prosecutor's remarks regarding [Appellant's] mother's failure to testify.
>
> III. Whether the court's sentence was harsh and unreasonable.

Appellant's Brief at 8.

In his first issue, Appellant avers the trial court erred in admitting evidence of his past sexual behavior. It is well settled that the admissibility of evidence is left to the sound discretion of the trial court, and a reviewing court will not disturb an evidentiary ruling absent an abuse of that discretion. *Commonwealth v. Arrington*, 86 A.3d 831, 842 (Pa. 2014).

In its Pa.R.A.P. 1925(a) opinion, the trial court thoroughly addressed Appellant's claim of error as follows:

> [Appellant] first contends that the [trial court] erred in allowing [S.S.] to testify that [Appellant] had continuously raped her as a child, prior to the incident at bar. Despite the fact that [Appellant] was found not guilty of all sexual charges, he argues that the admission of the incidents was "extremely prejudicial." [Appellant's] assertion is incorrect.
>
> Notably, even if the prior incidents had been entered erroneously, it would be a moot point and harmless error. The doctrine of harmless error was designed "to advance judicial economy by obviating the necessity for a retrial where the

- 5 -

appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one." *Commonwealth v. Bond*, 190 A.3d 664, 671 (Pa. Super. 2018), appeal denied, 189 A.3d 992 (Pa. 2018) ((quoting *Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012)). As the Commonwealth remarked at [Appellant's] post-sentence reconsideration hearing, "either the jury didn't put any credit to the prior bad acts … or they didn't hold it with much weight because they found [Appellant] ultimately not guilty of the underlying sexual offenses." (N.T. 06/01/18 at pp. 9-10). As [Appellant] was found not guilty on every single charge relating to sexual contact and the prior incidents were admitted in response to those charges, it is apparent that excluding the evidence of sexual crimes would not affect the outcome of the trial in any way. Therefore, respectfully, regardless of whether the prior crimes should have been admitted, the court's decision should be affirmed.

However, even if [Appellant] had been found guilty of any sexual charge, the incidents would still be properly admitted. … To determine whether the evidence in question should be admitted, the trial court "must weigh the evidence and its probative value against its potential prejudicial impact." [*Commonwealth v. Wattley*, 880 A.2d 682, 685 (Pa. Super. 2005)]. Even when the evidence is prejudicial, it may be admitted under Pa. R. Evid. 404(b) "where it serves a legitimate purpose" such as inclusion to show motive, intent, absence of mistake, common scheme, and identity. *Id.*

Additionally, evidence of a prior sexual allegation is [admissible] if it shows that the [d]efendant's sexual misconduct was "of a continuing and escalating nature" towards a specific victim. *Commonwealth v. Dunkle*, 602 A.2d 830, 839 (Pa. 1992). This is admissible to show "a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." *Commonwealth v. Lomax*, 8 A.3d 1264, 1266-67 (Pa. Super. 2010) (quoting McCormick, Evidence § 190, at 449 (2d ed. 1972)). "This 'lustful disposition' exception to the general rule against the admission of evidence of prior or subsequent bad acts has been consistently recognized by our Supreme Court for more than a century." *Commonwealth v. Wattley*, 880 A.2d 682, 686-87 (Pa. Super. 2005).

To be admissible, prior sexual misconduct between a defendant and a victim needs to be connected to the current case enough to show a continuing course of conduct, or lead to a reasonable inference that a defendant has a propensity towards illegal sexual acts with the victim. *Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010). The former conduct does not require a conviction in court to be admissible. *Id.* at 926. The former conduct does not have to be within the same time period or even within the statute of limitations to be admissible. *Commonwealth v. Wattley*, 880 A.2d 682, 686 (Pa. Super. 2005). And the former conduct does not have to be of the same nature as the conduct at trial to be admissible. *Commonwealth v. Dunkle*, 602 A.2d 830, 839 (Pa. 1992).

Finally, another legitimate purpose exception for prior sexual allegations in a trial is the *res gestae* exception:

> Pennsylvania courts "have long recognized the special significance of evidence which provides the factfinder with the *res gestae*, or complete history, of a crime." . . . *Res gestae* evidence is of particular import and significance in trials involving sexual assault. "By their very nature, sexual assault cases have a pronounced dearth of independent eyewitnesses, and there is rarely any accompanying physical evidence. . . . In these cases the credibility of the complaining witness is always an issue."

*Commonwealth v. Wattley*, 880 A.2d 682, 687 (Pa. Super. 2005) (citations omitted).

In the present case, the court weighed the probative aspects of these prior incidents against the possible prejudice to [Appellant] and concluded that any prejudice was outweighed. In addition to more generally demonstrating [Appellant's] intent, common scheme, and absence of mistake in sexually assaulting his cousin, these incidents would demonstrate his "lustful disposition" towards illicit sexual relations with this specific victim and a necessary *res gestae* of the case. The incidents were primarily admissible to demonstrate [Appellant's] "passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." [S.S.'s] testimony that [Appellant] had sexually assaulted her on numerous prior occasions tended to show a continuing course of conduct wherein

[Appellant] force[d] himself on his cousin when they were alone in the homes of various family members. Additionally they also provided the factfinders with the case's *res gestae*; in deciding to include these incidents, the court noted that they were necessary to show "a complete picture" of [Appellant] and [S.S.'s] relationship. (N.T. 12/04/17 at p. 10). For example, the previous incidents provided context for when [Appellant] told [S.S.] "you are the love of my life" and "I've always loved you" during the sexual encounter at issue. Without this history, the nature of the relationship between the cousins would have been unnecessarily confused.

The potential prejudice from the admission of these incidents was lessened by the court's pointed jury instruction on the matter: this is because "when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (noting that jurors are presumed to follow the court's instructions). The court emphasized, in a jury instruction approved by [Appellant], that the evidence was before the jury for a limited purpose and should not be considered for any reason other than showing [Appellant's] lustful desires toward [S.S.] and the cousins' relationship history. As a jury is presumed to follow jury instructions, this lessened the prejudicial effect of the statements.

[Appellant] argued primarily that these incidents were overly prejudicial because they were "unproven" and because they ended between twelve and sixteen years before the incident in question. [Appellant's] first argument is null: case law shows that admissible prior incidents under Rule 404(b) are not limited to court convictions. *Young*, 989 A.2d at 924. His second argument, that a lengthy pause in alleged sexual activity meant "there is not a continuing course of conduct," is more persuasive, but still insufficient to overcome the probative effect of the prior incidents. (N.T. 12/04/17 at p. 11).

As highlighted continuously in our case law, the remoteness in time of former conduct is simply one more factor to be considered in … [an] admissibility determination; it is not dispositive as long as the former conduct leads to a reasonable inference that a defendant has a continuing course of illicit sexual contact with a victim. *Commonwealth v. Knowles*, 637 A.2d 331, 333 (Pa. Super. 1994) (finding a continuing course of conduct

despite a gap of five to seven years, because the evidence indicated that "the sexual abuse was resumed when the defendant had an opportunity to be alone with the victim"); *see also Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010) (holding evidence of the defendant's prior sexual assault of a different but similar victim was admissible despite a ten to eleven year gap between incidents).

Here, the trial court found that there was enough evidence to show a continuing course of conduct of illicit sexual activity between [Appellant] and [S.S.] due to the fact that whenever [Appellant] had access to [S.S.], the contact would occur. [S.S.] was more accessible to [Appellant] as a child when their families would spend a significant amount time together. As she grew older, [S.S.] testified that she autonomously told [Appellant] "enough is enough," shut down all sexual contact, and avoided him, for example, telling her sister not to allow him in her house. However, years later, when [Appellant] finally again had access to [S.S.] again (when she was forced by circumstances to sleep over at [Appellant's] mother's home) the sexual abuse continued.

Trial Court Opinion, 1/15/19, at 5-9 (internal footnote omitted).

After review, we agree with the trial court's analysis, and we adopt the trial court's rationale as own. Accordingly, Appellant is entitled to no relief on his first claim of error.

Next, Appellant asserts that the trial court erred in denying a mistrial based on the prosecutor's closing remarks concerning Appellant's mother's failure to testify. Appellant's Brief at 21. After review, we conclude that this issue is waived.

It is well settled that in order to preserve a claim for appellate review, a party must make a timely and specific objection, or the claim is waived. Pa.R.A.P. 302(a); **Commonwealth v. McGriff**, 160 A.3d 863, 866 (Pa. Super. 2017). It is not this Court's responsibility to develop an argument for

an appellant or scour the record to find evidence to support an argument. ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1289 (Pa. Super. 2018). In his brief, Appellant failed to direct our attention to the place in the record where the allegedly improper remark occurred, cite to where he lodged a timely and specific objection, or point out where he moved for a mistrial. Accordingly, we conclude that this issue is waived.[4]

In his final claim of error, Appellant asserts that the sentence the trial court imposed was harsh and unreasonable. We conclude that no relief is due.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). An appellant challenging the discretionary

---

[4] We reiterate that this Court is not required to conduct an independent review of the record to develop an appellant's argument. ***Cannavo***, 199 A.3d at 1289. Nevertheless, it appears that the allegedly improper comment made by the prosecutor, which Appellant references in his brief at page 22, is located at pages 144 through 145 of the notes of testimony from December 7, 2017. N.T., 12/7/17, at 144-145. Assuming, *arguendo*, that we were to address Appellant's issue, we would note that, although the Commonwealth refers to Appellant's mother, ***id.*** at 144, Appellant's counsel merely made a general objection and said: "Your Honor, objection." ***Id.*** To the extent that this could be construed as an objection to the Commonwealth remarking that Appellant's mother refused to testify, we point out that the trial court did not specifically rule on this general objection. Moreover, **Appellant never moved for a mistrial**. Were we to reach this issue and deem this a specific objection and motion for a mistrial that was denied, we would conclude that Appellant is due no relief. Rather, we would rely on the rationale espoused by the trial court on this issue in its opinion. Trial Court Opinion, 1/15/19, at 10-13.

aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original). Whether a particular issue constitutes a substantial question about the appropriateness of a sentence is a question to be evaluated on a case-by-case basis. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

Herein, Appellant has met the first three requirements of the four-part test. Appellant filed a timely appeal, raised the challenge in a post-sentence motion, and included in his appellate brief the necessary statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raised a substantial question.

In his Rule 2119(f) Statement, Appellant asserts that his sentence was "manifestly excessive as to constitute too severe a punishment," and it was

- 11 -

imposed without consideration of mitigating factors or the factors set forth in 42 Pa.C.S. § 9721(b). Appellant's Brief at 16. This claim presents a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769-770 (Pa. Super. 2015) (*en banc*) (holding that an assertion that a sentence is excessive, in conjunction with an claim that the trial court failed to consider mitigating factors, raises a substantial question). Therefore, we will review the merits of Appellant's challenge to the discretionary aspects of his sentence.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006). In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, an appellant must establish by reference to the record that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. *Id.*

The sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference because the sentencing court is in the best position to view a defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted). When imposing a sentence, the

sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). As we have stated, "a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.*

Despite Appellant's protestations to the contrary, our review of the record reflects that at the time of Appellant's sentencing, the trial court was aware of the Sentencing Guidelines, reviewed all relevant and available information, balanced those considerations pursuant to 42 Pa.C.S. § 9721(b), and informed Appellant of the basis for the sentence. N.T., 3/16/18, at 4, 16-17. In its Pa.R.A.P. 1925(a) opinion, the trial court explained:

> In the case at bar, [Appellant's] sentence is reasonable and appropriate. [Appellant] asked for a sentence of eleven and a half to twenty-three months,[5] and the court bestowed an extremely similar sentence of twelve to twenty-four months. Though this sentence is slightly above the guideline range (restorative sanctions to nine months, plus or minus three), it is well below the maximum sentence for a misdemeanor of the first degree (five years) and fits the seriousness of [Appellant's] particular crime. …
>
> In deciding upon this sentence, the court considered all relevant reports, including [Appellant's] sentencing

---

[5] Specifically, at the sentencing hearing, Appellant's counsel stated: "We both agreed that the sentence of 11 and a half to 23 months would be appropriate with some sort of probationary tail[.]" N.T., 3/16/18, at 5-6.

memorandum, the presentence psychiatric report, the sentencing guidelines, [Appellant's] criminal history, and [Appellant's] mental health evaluation. (N.T. 3/16/18 at pp. 4, 16). The court also read a letter in support of [Appellant] from his aunt and listened to that same aunt speak on his behalf. (*Id.* at 9, 16). The court listened as [Appellant] made the following statement: "I'm sorry that this happened to my family and hopefully my family can get through this all right." (*Id.* at 16). In addition, the court sat through the entire jury trial, observed all witnesses and testimony, and remarked at sentencing that "I remember the trial" and "I am concerned about the nature of this crime." (*Id.* at 11, 16).

The court also noted its concern regarding a prior similar indecent assault on [Appellant's] record. (*Id.* at 11-12). Although this earlier assault took place when [Appellant] was a juvenile, it has been established that a prior juvenile conviction may be considered as a factor in discretionary sentencing. 42 Pa.C.S.A. § 6354 … ; *See Commonwealth v. Hale*, 128 A.3d 781, 785 (Pa. 2015) (noting that a juvenile record may be used as a consideration in a discretionary sentencing determination). As in *Conte*,[6] the sentence here is fair, reasonable, and well-founded.

_____

[6] In **Commonwealth v. Conte**, 198 A.3d 1169 (Pa. Super. 2018), the defendant was charged with multiple counts of rape, involuntary deviate sexual intercourse, aggravated indecent assault, and endangering the welfare of a child. **Id.** at 1172. Following a jury trial, the defendant was found guilty on only the charge of endangering the welfare of a child. **Id.** at 1173. The trial court imposed the statutory maximum sentence of thirty to sixty months of incarceration. **Id.** On appeal, the defendant alleged that the trial court abused its discretion in imposing such a long sentence as he was found guilty of only a "relatively insignificant misdemeanor." **Id.** at 1175. This Court affirmed the judgment of sentence concluding as follows:

[T]he reasons for the sentence were aptly stated on the record. As mentioned by the trial court in its opinion, it had the benefit of sitting through the entire trial and observing the presentation and demeanor of the witnesses, including [the defendant]. The sentencing court is in a superior position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon

Trial Court Opinion, 1/15/19, at 15-16.

Upon review, we discern no abuse of discretion in the sentence imposed. The trial court set forth its considerations, explained the basis for the sentence, and considered the factors set forth in 42 Pa.C.S. § 9721(b). Accordingly, Appellant's contrary claim lacks merit.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Therefore, we affirm the March 16, 2018 judgment of sentence.

Judgment of sentence affirmed.

Judge Nichols did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/19

---

appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

*Id.* at 1177 (internal citations and quotation marks omitted).

- 15 -