2018 PA Super 327

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES MAURICE CANNAVO, JR. | : | |
| | : | |
| Appellant | : | No. 3729 EDA 2017 |

Appeal from the Judgment of Sentence June 22, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0004483-2015

BEFORE: BENDER, P.J.E., NICHOLS, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.: **FILED DECEMBER 3, 2018**

Appellant, James Maurice Cannavo, Jr., appeals from the judgment of sentence entered in the Court of Common Pleas of Chester County on June 22, 2017, following his conviction by jury of attempted murder in the first degree, aggravated assault, recklessly endangering another person, and simple assault, along with his bench-trial conviction of persons not to possess a firearm.[1] For the following reasons, we affirm.

_____

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901, 2502(a) (attempted first-degree murder); 18 Pa.C.S. § 2702(a)(1), (4) (aggravated assault); 18 Pa.C.S. § 2705 (recklessly endangering another person); 18 Pa.C.S. § 2701(a)(1), (2) (simple assault); 18 Pa.C.S. § 6105(a)(1) (persons not to possess a firearm). The Section 2705 and 2701(a)(1) sentences merged with the attempted first-degree murder sentence. The Section 2701(a)(2) sentence merged with the Section 2702(a)(4) sentence.

Appellant was staying at a carriage house near West Chester University on Halloween night in 2015. That night, the victim and his friends went out into the town of West Chester with minimal Halloween costumes. Some testimony indicated they were intoxicated. At 1:17 a.m., they purportedly attempted to enter what they believed to be a party around the carriage house, but were denied entry. The victim, and possibly others, subsequently banged on Appellant's door. Testimony varied as to the number of times the group banged on Appellant's door, though Appellant testified that he heard repeated, loud strikes.

Testimony also revealed that Appellant had a closed-circuit television that permitted him to see the area outside his door. Appellant fired a .40 caliber semiautomatic pistol at the door, without opening it. The bullet went through the door and struck the victim through his small intestine and colon. The police would later discover that, due to Appellant's prior criminal record, Appellant did not lawfully possess the gun he fired at the door. The victim survived, and police charged Appellant with the above crimes.

Appellant raised a claim of self-defense at trial. Prior to the court's instructions to the jury, Appellant requested a charge directing the jury to consider the castle doctrine, 18 Pa.C.S. § 505, which would inform the jury of a presumption of a reasonable belief that deadly force was necessary for Appellant to defend himself. The trial court denied Appellant's request.

The jury convicted Appellant of the above crimes, and the trial court subsequently convicted Appellant, following a bench trial, of persons not to

possess a firearm. The court sentenced Appellant on June 22, 2017, to an aggregate term of twenty-five to fifty years' imprisonment. Appellant filed post-sentence motions on June 30, 2017, which the trial court denied, after a hearing, on October 24, 2017. This appeal followed on November 15, 2017. Appellant filed a timely Pa.R.A.P. 1925(b) statement, and the trial court filed a responsive opinion.

Appellant raises two claims on appeal: (1) whether the trial court erred in denying Appellant's request to instruct the jury on the castle-doctrine presumption; and (2) whether the evidence was sufficient to sustain his conviction of attempted murder?

Our standard of review in regard to a trial court's decisions on jury instructions is well-settled: "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Galvin**, 603 Pa. 625, 651, 985 A.2d 783, 788-89 (2009). "[Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." **Commonwealth v. Hamilton**, 766 A.2d 874, 878 (Pa.Super. 2001). Appellate review of a court's decision as to whether the castle doctrine is applicable, however, is less clear. At issue are the following subsections of 18 Pa.C.S. § 505:

**(b) Limitations on justifying necessity for use of force**

\* \* \*

- 3 -

(2.1) Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:

> (i)  The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.

> (ii)  The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

(2.2) The presumption set forth in paragraph (2.1) does not apply if:

> (i)  the person against whom the force is used has the right to be in or is a lawful resident of the dwelling, residence or vehicle, such as an owner or lessee;

> (ii)  the person sought to be removed is a child or grandchild or is otherwise in the lawful custody or under the lawful guardianship of the person against whom the protective force is used.

> (iii)  the actor is engaged in a criminal activity or is using the dwelling, residence or occupied vehicle to further a criminal activity; or

> (iv)  the person against whom the force is used is a peace officer acting in the performance of his official duties and the actor using force knew or reasonably should have known that the person was a peace officer.

18 Pa.C.S. § 505(b)(2.1), (2.2).

The castle doctrine was formalized into statute by our legislature in 2011. Since that time, the trial court and the parties agree there has been sparse case law addressing the applicability of the castle doctrine. Our Supreme Court in 2016, however, provided some clarity on the application of the castle doctrine in **Commonwealth v. Childs**, 636 Pa. 322, 143 A.3d 823 (2016). In **Childs**, although the primary issue was whether the defendant was entitled to a castle-doctrine instruction when his trial took place after enactment of the castle-doctrine statute, but the act took place before enactment of the statute, our Supreme Court noted that the Section 505(b)(2.1) presumption did not actually alter the elements of a castle-doctrine defense. Instead, subsection 2.1 "provides an evidentiary mechanism to aid in the factfinder's evaluation of the merits of a castle doctrine defense." **Childs**, 636 Pa. at 335-36, 142 A.2d at 831-32. Subsection 2.1 consequently

> creates a presumption that impacts the evidentiary burden of a defendant seeking its protection as well as the factfinder's analysis of the evidence in order to determine whether the defendant has established a castle doctrine defense. It is a law that provides a method to enforce the right of self defense as embodied by the castle doctrine. In short, it is a procedural statute.

*Id.* at 338, 142 A.2d at 833.

Viewed in this light, and considering the castle doctrine's inclusion within the self-defense statute, it is apparent that the castle doctrine is an

- 5 -

evidentiary means by which a defendant may attempt to prove justification by self-defense. Thus, it is subject to a similar, initial standard by which courts must assess the appropriateness of a self-defense instruction, namely, that "a valid claim of self-defense [or the castle doctrine] must be made out as a matter of law, and this determination must be made by the trial judge. Such claim may consist of evidence from whatever source." ***Commonwealth v. Mayfield***, 585 A.2d 1069, 1070 (Pa.Super. 1991) (*en banc*). In the case *sub judice*, the trial court was tasked with determining whether Appellant made a valid claim for the castle doctrine as a matter of law.

Subsection 2.1 requires both subsections 2.1(i) and 2.1(ii) to be met in order for the castle doctrine to apply. ***See*** 18 Pa.C.S. § 505(b)(2.1) (reasonable belief of deadly force is presumed necessary "if **both** of the following conditions exist" (emphasis added)). Subsection 2.1(i) lists, *inter alia*, the following requirements: (A) the victim is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, (B) a dwelling, residence, or occupied vehicle. 18 Pa.C.S. § 505(b)(2.1)(i). Subsection 2.1(ii) then provides that the defendant must have known, or had reason to believe, that the unlawful and forceful entry or act is occurring.

Appellant initially argues that the trial court erred when it considered whether the castle doctrine applies to be a question of law. Appellant contends that such treatment by the trial court results in an unclear burden of proof for the trial court to make its determination, as well as removing the fact-finding

province from the jury. Appellant argues that the result is the denial of his right to due process of law. Appellant's argument fails.

Trial courts have long been tasked with the responsibility of determining whether the facts evinced at trial permit a self-defense instruction. ***See, e.g., Commonwealth v. Tilley***, 528 Pa. 125, 138-39, 595 A.2d 575, 581-82 (1991) (affirming trial court's refusal to instruct jury on self-defense because defendant "was unquestionably the aggressor" and because of lack of sufficient evidence to support finding that defendant was protecting himself from unlawful force); ***Commonwealth v. Serge***, 837 A.2d 1255, 1265-66 (Pa.Super. 2003) (affirming trial court's refusal to give instruction on imperfect self-defense when facts introduced at trial supported nothing more than defendant's voluntary intoxication).

We have established that the standards for permitting a castle-doctrine instruction are the same as when reviewing whether a self-defense instruction is appropriate. Thus, a court does not necessarily assess burdens of proof when considering the applicability of a castle-doctrine instruction, but instead whether there was any evidence to justify the instruction. ***Cf. Commonwealth v. Torres***, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001) ("While there is no burden on a defendant to prove the [self-defense] claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense.").

In the case *sub judice*, the trial court clearly based its finding on whether there was "some evidence, from whatever source," to justify the castle-doctrine instruction:

> There were approximately 8 to 10 persons in the alley outside the carriage house, including the victim, the victim's friends, and several neutral eyewitnesses. The witnesses' precise accounts of that evening differ, whether due to alcohol or the passage of time or both, but the facts they testified to are broadly consistent. They all testified that the group of intoxicated students, including the victim, became rowdy when they are denied entry into a nearby party. All but one of the witnesses agreed that the victim and possibly others struck the carriage house door, once or multiple times.
>
> However, none of them suggested that any member of the group was thinking about entering, or actually attempting to enter, the carriage house. No evidence whatsoever, express or implied, was presented at trial that the victim himself, Fletcher Grady, was attempting to gain entry to the carriage house at the time he was shot. . . . The only "evidence" that the victim was attempting to break into the carriage house is [Appellant]'s uncorroborated testimony of his personal, subjective belief that the victim was attempting to break in, which is contradicted by the physical evidence at the scene.

Trial Ct. Op., filed 12/19/17, at 5-6.

The trial court's statement that Appellant's testimony was uncorroborated is of no moment in determining whether it had the authority to decide whether to give an instruction on the castle doctrine, as Appellant's personal belief implicates only subsection 2.1(ii). Evidence supporting subsection 2.1(i) was also necessary, and the trial court explicitly found that there was no evidence presented indicating that the victim was in the process

of unlawfully and forcefully entering the carriage house. Accordingly, the trial court acted properly in considering the propriety of a castle-doctrine instruction to be a question of law subject to the court's review of the evidence presented. **See Childs**, **supra**; **Tilley**, **supra**.

Next, we address Appellant's claim that "questions of fact raised at trial must be decided by the jury – and not by the judge alone." Appellant's Brief at 32. Appellant does not elaborate on this argument, other than to quote this Court's *en banc* decision in **Mayfield**, **supra**. As we have found, the trial court appropriately confined its determination to whether there was any evidence of the victim's having unlawfully and forcefully attempted to enter the carriage house. Appellant would be entitled to relief, therefore, only if evidence was actually presented of the victim's unlawful and forceful attempt to enter the carriage house.

Appellant's argument section fails to cite any such evidence. **See** Pa.R.A.P. 2119(d) ("When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found."). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." **Milby v. Pote**, 189 A.3d 1065 (Pa.Super. 2018) (citing **Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa.Super. 2007)). Appellant's mere quotation of **Mayfield**, **supra**, fails to provide this Court with any meaningful application of **Mayfield** with the relevant facts. As we will not

make Appellant's arguments for him, we deem this claim waived. *See Milby*, *supra*.

The trial court opined, in the alternative, that even if Appellant had presented sufficient evidence to satisfy subsection 2.1, Appellant unlawfully possessed the firearm he used to shoot the victim, and thus he was "engaged in a criminal activity" as contemplated by Section 505(b)(2.2)(iii). Appellant urges this Court to read subsection 2.2(iii) in conjunction with subsection 2.3, which specifically precludes persons not to possess firearms, and find that the absence of such specific preclusion in subsection 2.2 means the legislature deliberately excluded such language from the castle doctrine's restrictions. Appellant argues that Section 505(d), which defines "criminal activity," further suggests his illegal possession of the weapon is not relevant for purposes of the castle doctrine because it was justifiable and related to the confrontation. We disagree.

Our objective when construing a statute is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. § 1921(a). "Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words." *Commonwealth v. Andrews*, 173 A.3d 1219, 1221 (Pa.Super. 2017) (quoting *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87 (1995)). When construing a statute, we begin with a presumption that the legislature intended the entire statute to be effective and certain. 1 Pa.C.S. § 1922(2); *Commonwealth v. Tareila*, 895 A.2d 166, 1269 (Pa.Super. 2006).

Section 505(d) defines "criminal activity" as follows: "[C]onduct which is a misdemeanor or felony, is not justifiable under this chapter and is related to the confrontation between an actor and the person against whom force is used." 18 Pa.C.S. § 505(d). Appellant asks this Court to compare Section 505(b)(2.2)(iii), which precludes application of the castle doctrine if "the actor is engaged in a criminal activity," with Section 505(b)(2.3), which provides: "An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat . . . has no duty to retreat and has the right to stand his ground and use force, including deadly force. . . ." We conclude that such comparison, however, is unnecessary and misleading. Subsection 2.3 involves circumstances when a defendant's duty to retreat is not required, better known as the "Stand Your Ground" defense. Subsection 2.3 has no bearing on whether the defendant's activity is considered criminal in nature.

Instead, because the language of Section 505(b)(2.2)(iii) is clear and unambiguous, we review simply whether Appellant's illegal possession of the firearm constituted criminal activity under Section 505(d). *See Andrews*, *supra*. It is undisputed that the illegal possession of a firearm constituted a felony. We agree with the trial court's assessment that by picking up the firearm while not in imminent danger from the victim, Appellant's action was not justifiable under Chapter 5 of the Crimes Code. Finally, Appellant's discharge of the illegal firearm was clearly related to his confrontation with the victim, as it was the weapon he used in coming into contact with the

- 11 -

victim.  Accordingly, we would also agree with the trial court that Section 505(b)(2.2)(iii) precluded Appellant from asserting a castle-doctrine defense.

Appellant's final argument is that the evidence was insufficient to support his conviction for attempted murder.  Appellant posits that the trial court failed to proffer an instruction on malice, resulting in the jury's failure to find the element of malice existed.  He claims that, in the self-defense context, an actual but unreasonable belief in the need to use deadly force negates malice.  We disagree.

Our well-settled standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict-winner, in this case, the Commonwealth, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt.  *Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa.Super. 2003).  "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence."  *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa.Super. 2007) (citation omitted).  Any doubt raised as to the accused's guilt is to be resolved by the fact-finder.  *Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa.Super. 2004).  We will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances."  *Bruce*, 916 A.2d at 661 (citation omitted).  "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt

by means of wholly circumstantial evidence." ***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa.Super. 2009) (citations omitted).

Initially, it appears that although Appellant couches his argument in terms of sufficiency of the evidence, he is actually arguing that the trial court erred in not giving the Suggested Standard Criminal Jury Instruction on malice. ***See*** Appellant's Brief, at 43-44 (quoting Pennsylvania Suggested Standard Jury Instruction (Crim.) 15.2503(1), (2)).[2] Any challenge by Appellant to the adequacy of the jury instructions regarding malice, however,

_____

[2] Appellant appears to quote an outdated version of the Pennsylvania Suggested Standard Criminal Jury Instructions. The current version of Instructions 15.203A(1) and (2) read as follows:

> 1. As my earlier definition of malice indicates, there can be no malice when certain reducing circumstances are present. When these circumstances are present, a killing may be voluntary manslaughter, but never murder. This is true when a defendant kills [in heat of passion following serious provocation] [or] [kills under an unreasonable mistaken belief in justifying circumstances].
>
> 2. Accordingly, you can find malice and murder only if you are satisfied beyond a reasonable doubt that the defendant was *not* acting [under a sudden and intense passion resulting from serious provocation by [the victim] [another person whom the defendant was trying to kill when [he] [she] negligently or accidentally killed the victim]] [or] [under an unreasonable belief that the circumstances were such that, if they exited, would have justified the killing].

Pennsylvania Suggested Standard Jury Instruction (Crim.) 15.2503(1), (2)).

is waived, as Appellant did not file an objection to the court's alleged failure to include the instruction.

> [U]nder Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconstant with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

***Commonwealth v. Baker***, 963 A.2d 495, 506 (Pa.Super. 2008) (quoting ***Commonwealth v. Pressley***, 584 Pa. 624, 632, 887 A.2d 220, 225 (2005)).

Perhaps recognizing that he had not filed an objection,[3] Appellant attempts to phrase his sufficiency argument in such a way that he can argue the jury never considered the element of malice, thus making the evidence insufficient to sustain his conviction for attempted murder.  Appellant ignores, however, the standard of review for sufficiency claims, which is to review the actual evidence presented at trial and all reasonable inferences therefrom, and then to determine if they are "sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt." ***Dale***, 836 A.2d at 152.

Simply stated, our review of sufficiency claims is not what instructions the jury followed to reach its verdict, but instead to evaluate the evidence the jury had before it.  Appellant cites no case law in support of his altered standard of review.  Accordingly, any argument Appellant makes in regard to

---

[3] We note that appellate counsel did not represent Appellant at trial.  Appellant was represented by different counsel.

- 14 -

the adequacy of the jury instructions regarding malice is waived, and we proceed to examine whether the evidence was sufficient to support his conviction of attempted murder.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *In re R.D.*, 44 A.3d 657, 678 (Pa.Super. 2012).

Appellant was charged with attempted murder of the first degree; first-degree murder is defined as follows: "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). An intentional killing is defined as: "Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). "[T]he period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact, the design to kill can be formulated in a fraction of a second." *Commonwealth v. Rivera*, 603 Pa. 340, 355, 983 A.2d 1211, 1220 (2009) (quoting *Commonwealth v. Drumheller*, 570 Pa. 117, 808 A.2d 893, 910 (2002)).

"The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from the circumstantial evidence. The law permits

the fact finder to infer that one intends the natural and probable consequences of his acts." **Commonwealth v. Jackson**, 955 A.2d 441, 444 (Pa.Super. 2008). "The manner by which a killing is accomplished can provide an inference of specific intent to kill: *i.e.*, the use of a deadly weapon upon a vital part of the victim's body allows such an inference." **Commonwealth v. Bennett**, 618 Pa. 553, 581, 57 A.3d 1185, 1202 (2012).

We have no hesitation in finding the evidence sufficient to support the elements of attempted murder of the first degree. By firing his weapon toward a group of people, he took a substantial step toward the commission of the crime. **See** 18 Pa.C.S. § 901(a). Although Appellant fired through a door and did not see the victim as he was firing, he fired the gun toward where he perceived the group of people to have been standing and at an abdominal-area height, which ended up striking the victim in the small intestine. Appellant therefore fired the bullet toward a vital part of the victim's body, which was sufficient for the jury to infer a specific intent to kill. **See Bennett**, *supra*.

To the extent Appellant may argue evidence of malice was necessary to convict for attempted murder, Appellant acknowledges that this Court has consistently held malice is not an element of attempted murder. **See, e.g., Commonwealth v. Geathers**, 847 A.2d 730, 736 (Pa.Super. 2004) ("[M]alice is not an element of attempted murder."). It is well-settled that we are bound by prior decisions of this Court. **See Commonwealth v. Coppedge**, 984 A.2d 562, 565 (Pa.Super. 2009) (quoting **Commonwealth v.**

*Baker*, 963 A.2d at 509). Even if we were to consider the sufficiency of the evidence to support malice, "[s]pecific intent and malice may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Arrington*, 624 Pa. 506, 522, 86 A.3d 831, 840 (citing *Houser*, 610 Pa. at 273, 18 A.3d 1128 at 1133-34). As we have found *supra*, Appellant's firing his weapon toward the abdominal area of the group of people is sufficient to show that he used a deadly weapon toward a vital part of the body. Appellant's argument fails, and the evidence was sufficient to support his conviction for attempted murder.

Judgment of sentence affirmed.

Judge Nichols joins the Opinion.

P.J.E. Bender files a Concurring Opinion.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/18