J-A07015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
                                  :
              v.                       :
                                  :
                                  :
MITCHELL NAZARIO                    :
                                  :
             Appellant         :     No. 376 MDA 2019

Appeal from the Judgment of Sentence Entered January 18, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001479-2017

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:          **FILED: MAY 4, 2020**

Appellant, Mitchell Nazario, appeals from the January 18, 2018 judgment of sentence of life imprisonment after a jury convicted Appellant of murder in the first degree.[1]  We affirm.

The trial court summarized the factual history as follows:

On the night of February 1, 2016, Alexa Pritt heard people talking outside her home in the area of Kittatinny and South 14th Street in Harrisburg[, Pennsylvania].  She next heard two loud booms or cracks, then the sound of car tires screeching.  Ms. Pritt looked out her window and saw a dark-colored car drive away toward a stop sign [and] then turn right.  Ms. Pritt saw something in the middle of the street[,] which she thought might have been a tire. Frightened, Ms. Pritt looked out her front door and saw a truck drive by the object, flash its lights, [and] then continue [driving

---

[1] 18 Pa.C.S.A. § 2502(a).  Appellant was also charged with possession of a firearm prohibited and firearms not to be carried without a license. 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.  On March 23, 2018, the trial court granted the Commonwealth permission to enter a *nolle prosequi* on these two charges.

forward]. Within approximately five minutes of hearing the loud noises, police and ambulances arrived at the scene and attempted to revive a person lying in the street.

That night, Robert Mumma went with a friend to the area of [South] 14th and Kittatinny Streets to buy drugs. Shortly before the killing occurred, Mumma briefly saw the victim, Freddy J. Williams, known as Freddie J, ["Williams"] in an alleyway near the house where Mumma intended to buy drugs. Mumma knew [Williams] from Dauphin County Prison and as a fellow drug user. [ ] After buying drugs, Mumma returned to the vehicle in which his friend waited. Mumma intended to use the heroin in the vehicle. As he sat in the parked vehicle, Mumma saw [Williams] pace back and forth from corner to corner. Mumma next observed a car pull up and stop. [Williams] approached the passenger side of the car and leaned on the car. Mumma did not see any attempt by [Williams] to enter the car. Mumma took note of the vehicle, worried that it might be police. Immediately after [Williams] approached the stopped car, Mumma heard shots. Mumma heard [Williams] yell something[,] which he could not discern, [and] then saw him fall down. Mumma observed the car speed off. The driver of the vehicle in which Mumma rode drove to the spot where [Williams] was lying in the street. It was apparent to Mumma that [Williams] was mortally wounded. Mumma and the driver left the scene. Mumma did not observe any weapons on [Williams] as he lay in the street.

Harrisburg City Police Officer Brian Carriere[] was working patrol in a marked police unit that night when, at 9:52 p.m., he received a dispatch of a victim down near the intersection of South 14th and Kittatinny Streets. When Officer Carriere arrived, he saw [Williams] lying in the middle of the street. Officer Carriere observed a gunshot wound to [Williams's] right arm and a bullet in the chest or abdominal area.

Officer Donald Bender also responded to the scene. Officer Bender observed [Williams] to be in grave condition. Officer Bender observed an exit wound to Williams'[s] back and an expanded projectile embedded in his clothing on the right side of his chest. Paramedics arrived and transported [Williams] to [the] hospital. Williams was pronounced dead shortly after arrival at the hospital.

Forensic pathologist Wayne Ross, M.D., testified regarding the autopsy performed upon Williams. The autopsy revealed gunshot wounds to the right side of the body, one to the right chest, one

to the right forearm and a third impact wound to the chest. Dr. Ross categorized the injury to [Williams's] right forearm as a defensive [wound] sustained when [Williams] raised his right extremity in an attempt to ward off a gunshot. One gunshot passed entirely through the right lung, with a trajectory of front to back and downward. The gunshot to the lung caused Williams'[s] death. Because no soot or [gunshot] residue existed at the wound sites or on the clothing, Dr. Ross opined that the shots were fired from a distance of three to four feet or greater. Dr. Ross opined that based upon Williams'[s] height [of] five feet two inches, the lack of soot and [gunshot] residue, and the trajectory of the bullets, Williams was outside the vehicle when shot.

Ten days later, on February 11, 2016, Harrisburg City Police Officer Daniel [Antoni] encountered [Appellant] in the area of Hall Manor near the scene of the homicide. Officer [Antoni] identified himself as a police officer and approached [Appellant]. [Appellant] appeared shocked [and] then took a step as if he intended to run. Officer [Antoni] drew his gun and commanded [Appellant] to get on the ground. Fellow officer Nate Owens arrived and placed [Appellant] in handcuffs. Officer Owens patted [Appellant] down and retrieved a .40 caliber semiautomatic handgun with an extended magazine. [Appellant] told police that he obtained the gun a few days earlier. [Appellant] was not charged with the murder at that time.

Harrisburg Police sent the gun to the Pennsylvania State Police for laboratory testing. The testing revealed that the cartridge case obtained from the homicide scene and the bullet jacket retrieved from Williams'[s] body during the autopsy were discharged from the .40 caliber semiautomatic handgun removed from [Appellant's] person on February 11, 2016.

On February 1, 2017, one year after the killing occurred, Harrisburg City Police Detective Jason Brinker conducted a recorded interview of [Appellant]. Throughout the one hour and forty minute interview, [Appellant] denied involvement in the killing. Detective Brinker then consulted with the Office of the District Attorney to obtain authorization to charge [Appellant]. Detective Brinker apprised [Appellant] that he would be charged with murder. The detective then initiated a second interview of [Appellant] in which he employed a different interview technique. In that interview, [Appellant] admitted that he shot [Williams.]

> At trial, [Appellant] testified that on the night of the incident, as he slowed his car to [a] stop at a stop sign in the area of [South] 14th and Kittatinny Streets, he saw [Williams] running toward the car. When [Appellant] stopped his car, [Williams] banged on the window. [Appellant] testified that [Williams] then ran to the passenger side of the car. [Appellant] testified that he rolled down the window and asked [Williams] what he needed. [Appellant] testified that [Williams] appeared intoxicated and partially entered the passenger side window and appeared to reach for something. [Appellant] stated that he grabbed his gun from his lap and shot [Williams] twice. [Appellant] admitted that he did not see what [Williams] had in his hand and that [Williams] neither displayed a weapon nor made a threat upon [Appellant's] life.

Trial Court Opinion, 9/4/18, at 1-5 (citations to notes of testimony omitted).

On January 18, 2018, a jury convicted Appellant of murder in the first degree. That same day, the trial court sentenced Appellant to a mandatory term of life in prison. Appellant filed a post-sentence motion that the trial court subsequently denied. On March 2, 2018, Appellant filed a notice of appeal. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days. Appellant timely compiled. The trial court subsequently filed a Rule 1925(a) opinion on September 4, 2018. In a *per curiam* order, this Court dismissed Appellant's appeal for failure to file a brief.[2]

---

[2] This appeal was docketed with this Court at 413 MDA 2018.

On December 6, 2018, Appellant filed a petition with the trial court to reinstate his direct appeal *nunc pro tunc*. The trial court granted Appellant's petition on January 30, 2019.[3]

Appellant raises the following issues for our review:

A.  Whether the [trial] court erred in failing to properly instruct the jury on the presumption of necessity for use of deadly force under Pennsylvania's version of the castle doctrine?

B.  Whether the [trial] court erred by allowing the Commonwealth to publish to the jury portions of a recorded police interview containing highly prejudicial references to Appellant's prior criminal history where Appellant and the Commonwealth stipulated to limit such testimony?

Appellant's Brief at 11 (extraneous capitalization omitted).[4]

Appellant's first issue challenges the trial court's denial of a jury instruction on the presumption that deadly force is imminently necessary to protect oneself against death and serious bodily injury pursuant to the castle doctrine. *Id.* at 23-27.

In reviewing a trial court's denial of a jury instruction, our standard of review is as follows:

[o]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a [trial] court's decision only when it abused its discretion or committed an error of law. Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly

---

[3] The trial court did not direct Appellant to file a Rule 1925(b) concise statement. The trial court filed a statement on June 10, 2019, referencing its September 4, 2018 Rule 1925(a) opinion.

[4] For ease of reference, we have assigned page numbers to Appellant's Brief.

presents the law to the jury, and is sufficient to guide the jury in its deliberations.

*Commonwealth v. Cannavo*, 199 A.3d 1282, 1286 (Pa. Super. 2018) (quotation marks and original brackets omitted), *appeal denied*, 217 A.3d 180 (Pa. 2019).

In criminal cases, "the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." *Commonwealth v. Pressley*, 887 A.2d 220, 225 (Pa. 2005) (footnote omitted). "Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the [trial] court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue." *Id.* at 224 (citation and footnote omitted).

A doctrine of common law origin,[5] the castle doctrine "is an evidentiary means by which a defendant may attempt to prove justification by

---

[5] "The traditional common law castle doctrine is a basic tenet of American law: 'The principle that a man's home is his castle is basic to our system of jurisprudence.'" *Commonwealth v. Childs*, 142 A.3d 823, 828 (Pa. 2016) (citation and brackets omitted). "The ideological foundation for the castle doctrine is the belief that a person's home is his castle and that one should not be required to retreat from his sanctum." *Id.* (citation omitted).

self-defense." ***Cannavo***, 199 A.3d at 1287. In 1972, the castle doctrine was codified in Pennsylvania at 18 Pa.C.S.A. § 505 and later amended by Pennsylvania legislation in 2011. Section 505, in pertinent part, states,

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.**-- The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.**--

. . . .

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

(2.1) Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:

(i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or

- 7 -

the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.

(ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

(2.2) The presumption set forth in paragraph (2.1) does not apply if:

. . . .

(iii) the actor is engaged in a criminal activity or is using the dwelling, residence or occupied vehicle to further a criminal activity;

18 Pa.C.S.A. § 505(a), (b)(2), (b)(2.1), and (b)(2.2)(iii). "[Trial] courts must assess the appropriateness of a self-defense instruction, namely, that a valid claim of self-defense or the castle doctrine must be made out as a matter of law, and this determination must be made by the trial [court]. Such claim may consist of evidence from whatever source." *Cannavo*, 199 A.3d at 1287 (citation, original brackets, and original quotation marks omitted). Section 505(b)(2.1) "requires both subsections 2.1(i) and 2.1(ii) to be met in order for the castle doctrine to apply." *Cannavo*, 199 A.3d at 1287.

Here, Appellant argues that the castle doctrine was applicable because "the evidence at trial demonstrated that Williams unlawfully and forcefully entered [Appellant's] vehicle which [Appellant] occupied at the time and [Appellant] was aware that the unlawful and forceful entry was occurring." Appellant's Brief at 26. Specifically, Appellant contends the evidence demonstrated

- 8 -

> [Appellant] lowered his passenger [side] window to speak with Williams to see if Williams needed aid due to the cold weather, Williams then jumped, uninvited, through [Appellant's passenger side] window and began to scream and grab at [Appellant]. Williams then began to reach for something on his person, which [Appellant] believed would cause him serious injury. It was []reasonable for [Appellant] to believe that Williams was reaching for a weapon due to their presence in a high gun violence neighborhood.

*Id.* at 26-27. Appellant argues the castle doctrine was applicable and the trial court erred in failing to instruct the jury as to the presumption that Appellant was justified in using deadly force to protect himself against death or serious bodily injury. *Id.* at 27.

A review of the record demonstrates Appellant submitted proposed jury instructions that included Pennsylvania Suggested Standard Criminal Jury Instruction 9.501(A) related to the castle doctrine and the use of force or deadly force in self-defense. Pa.S.S.J.I. (Criminal) §9.501(A) (2012). The record further demonstrates that at the close of testimony and prior to the trial court charging the jury, Appellant argued the applicability of the castle doctrine presumption before the trial court. N.T., 1/17/18, at 328-332. Appellant, admitting that he was in possession of an illegal firearm at the time of incident, argued that Section 505(b)(2.3) did not preclude the presumption instruction because Section 505(b)(2.3), commonly referred to as the stand your ground defense, applied in circumstances not present in the case *sub judice*. *Id.* at 329. The trial court charged the jury, in pertinent part, as follows:

If the Commonwealth proves to you beyond a reasonable doubt that [Appellant] used deadly force then to prove that such force was not justifiable in this case it must prove one of the following elements beyond a reasonable doubt: A, that [Appellant] did not reasonably believe that he was in immediate danger of death or serious bodily injury at the time he used the force, and that, therefore, his belief that it was necessary for him to use deadly force to protect himself was unreasonable.

Put another way, the Commonwealth must prove either that [Appellant] did not actually believe he was in danger of death or serious bodily injury such that he needed to use deadly force to defend himself at that point; or, that while [Appellant] actually believed he needed to use deadly force, his belief was unreasonable in light of all the circumstances known to him.

Keep this in mind: A person is justified in using deadly force against another not only when they are in actual danger of unlawful attack but also when they mistakenly but reasonably believe they are. A person is entitled to estimate the necessity for the force he employs under the circumstances as he reasonably believes them to be at the time. In the heat of conflict, a person who has been attacked ordinarily has neither time nor composure to evaluate carefully the danger and make nice judgments about exactly how much force is needed to protect himself.

Consider the realities of the situation faced by [Appellant] here when you decide whether or not the Commonwealth has proven beyond a reasonable doubt either that, one, he did not believe he was actually in danger of death or serious bodily injury to the extent that he needed to use such force in self-defense; or, two, that while he did believe that, his belief was unreasonable.

That [Appellant] knew he could avoid the necessity of using force with complete safety by retreating, but he failed to do so, is the other area that you should consider when deciding whether or not the Commonwealth has proven the elements beyond a reasonable doubt.

Now, the final area I must discuss with you is voluntary manslaughter. And then I'm going to give you some final instructions, and you'll be prepared to deliberate.

As my earlier definition of malice indicates, there can be no malice when certain reducing circumstances are present. When these

circumstances are present a killing may be voluntary manslaughter, but never murder. This is true when a defendant kills under an unreasonable mistaken belief in justifying circumstances.

Accordingly, you can find malice and murder only if you are satisfied beyond a reasonable doubt that [Appellant] was not acting under an unreasonable belief that the circumstances were such that if they existed would have justified the killing.

The reducing circumstance of a defendant acting under an unreasonable belief that the circumstances of the killing were justified applies where [Appellant] actually believed that he was in immediate danger of death or serious bodily injury at the time he used deadly force but his belief was unreasonable in light of the facts as they appeared to him at the time; or [Appellant] did not violate his duty to retreat from the place as I explained those terms when I described to you the justification defense.

So let me read this again to you: The reducing circumstance of a defendant acting under an unreasonable belief that the circumstances of the killing were justified applies where, one, [Appellant] actually believed that he was in immediate danger of death or serious bodily injury at the time he used deadly force but his belief was unreasonable in light of the facts as they appeared to him at the time; or [Appellant] did not violate his duty to retreat from the place as I explained those terms when I described to you the justification defense.

*Id.* at 401-404. At the conclusion of the charge, the trial court asked Appellant if there were any exceptions to the instructions, to which Appellant replied, "No objection, Your Honor." *Id.* at 408.

A review of the record demonstrates Appellant failed to properly preserve this issue for appellate review because Appellant failed to object or take exception to the jury instructions after they were given but before the jury began its deliberation. The fact that Appellant's proposed jury instructions included a request for the castle doctrine presumption and the

- 11 -

fact that Appellant presented an argument in favor of the same to the trial court prior to the charge being given does not excuse Appellant's failure to properly preserve this issue by specifically objecting at the conclusion of the instructions or noting his exception on the record regarding the trial court's decision not to give the requested charge. Therefore, we concur with the trial court that Appellant waived this issue.[6]

Appellant's second issue challenges the trial court's denial of his motion for a mistrial based upon the admission of video evidence that allegedly contained highly prejudicial references to Appellant's criminal history. Appellant's Brief at 28-32.

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden

---

[6] Alternatively, if Appellant had not waived this issue, we would find Appellant's argument to be without merit. "Statutory interpretation is a matter of law, and our standard of review is *de novo* and our scope of review is plenary." ***Childs***, 142 A.3d at 827 (citation omitted). While Section 505(b)(2.3) applies in factual circumstances not present in the case *sub judice*, Section 505(b)(2.2) precludes the castle doctrine presumption when, *inter alia*, "the actor is engaged in criminal activity." 18 Pa.C.S.A. § 505(b)(2.2). In the instant case, Appellant admitted that he unlawfully possessed the firearm he used to shoot Williams. As such, Appellant was engaged (and charged with engaging) in criminal activity at the time he used deadly force to kill Williams. Therefore, Appellant is not entitled to the castle doctrine presumption. Moreover, Dr. Ross, in his expert medical opinion, stated that Williams was standing outside Appellant's car and not coming through the passenger side window at the time he was shot and that the wounds were consistent with someone in retreat. Mumma's eyewitness testimony confirmed this opinion when he said he did not see Williams attempt to enter the passenger side window of Appellant's vehicle. Consequently, we would find Appellant's issue to be without merit.

> or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.

*Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (citations, quotation marks, and ellipsis omitted), *cert. denied*, 566 U.S. 986 (2012). "The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Cornelius*, 180 A.3d 1256, 1261 (Pa. Super. 2018) (citation omitted). "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed." *Id.* at 1262, *citing* Pa.R.Crim.P. 605(B). Failure to object when the disclosure occurs constitutes waiver of the issue. *Cornelius*, 180 A.3d at 1262. "Harmless error exists where (1) the error did not prejudice the defendant or the prejudice was *de minimus*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Commonwealth v. Freeman*, 827 A.2d 385, 411 (Pa. 2003) (citation omitted).

Here, the record demonstrates that prior to trial, the Commonwealth stated the video interview of Appellant by the police, which it intended to play for the jury, contained "numerous references to [Appellant] being on parole, to being released from State prison, to being in the hole in State prison, [and] a number of things that would be obviously on their face prejudicial." N.T., 1/16/18, at 7. Appellant concurred that "[s]ome of those statements involve [Appellant] alluding to the fact that he was just released from incarceration; also, that he did hustle drugs in the past, things of that nature[.]" *Id.* The Commonwealth stated that it edited the video so the prejudicial statements would be muted during playback.[7] *Id.* The trial court allowed the edited video to be played and stated it would instruct the jury that the muted portions were not relevant in the instant case. *Id.* at 11-12.

Appellant argues that despite the Commonwealth's assurance that the prejudicial statements were muted, several "highly prejudicial" statements made during the interview were nevertheless audible to the jury.[8] Appellant's

_____

[7] We note that Appellant did not view the edited video before it was played for the jury. N.T., 1/17/19, at 224.

[8] The trial court held that Appellant waived this issue for failure to specifically cite locations within the record where highly prejudicial statements from the interview were found. Trial Court Opinion, 9/4/18, at 8-9. Notwithstanding, the trial court proceeded to address the merits of Appellant's issue with regard to the audible portions of the interview where Appellant objected on the record. *Id.* at 9-10. Where appellant's Rule 1925(b) statement is overly vague to the extent that the trial court is unable to discern the specific points of the trial appellant is referring to, appellant waives that issue. *Commonwealth v. Postie*, 110 A.3d 1034, 1041 (Pa. Super. 2015).

Brief at 30-32. Specifically, Appellant contends the audible video included the police asking Appellant if he were "in here for gun charges," a reference to Appellant being released from prison, the police asking Appellant if Williams was trying to buy drugs from Appellant, and the police asking Appellant, in reference to his selling drugs, if he had "hustled in the past" to which Appellant stated, "Yeah, I hustled." *Id.* at 30-31. Appellant argues, "the jury hearing that [Appellant] was previously incarcerated and sold drugs inflamed the passions of the jury and caused the jury to render a verdict based on the fact that [Appellant] was a supposed drug dealer and had been in jail before." *Id.* at 32.

A review of the notes of testimony reveals that Appellant moved for a mistrial and objected after each of the three audible portions of the interview that Appellant deemed highly prejudicial. N.T., 1/17/18, at 222, 225, 230-231, and 239. In response to the audible question, "You're in here for gun charges[,]" the trial court stated, "[b]ased on the prior evidence of [Appellant] having the gun and the fact that he's admitting to having shot [Williams], although it's in self-defense, I'm going to permit it to go on and

_____

Although counsel is required to cite specific instances of error with references to the notes of testimony in the Rule 1925(b) statement to avoid waiver of the issue, we decline to find waiver in this instance because the trial court was able to discern the claims of error upon review of the notes of transcript and address those claims. Furthermore, we note that Appellant was required to submit a Rule 1925(b) statement before the notes of testimony were filed. *Commonwealth v. Harris*, 979 A.2d 387, 390 n.1 (Pa. Super. 2009) (stating, "since counsel was ordered to file the [Rule 1925(b)] statement before receiving the trial transcripts, we will overlook what would otherwise be []unacceptable vagueness in the statement").

note your exception." *Id.* at 228. The trial court explained, "that inadvertent inclusion of reference to gun charges did not create prejudice as [Appellant] acknowledged throughout the case that [he] possessed a gun and shot [Williams]." Trial Court Opinion, 9/4/18, at 9.

At trial, Appellant testified that on the evening in question, he possessed a gun. N.T., 1/17/18, at 272-273, 277-278. Officer Antoni stated that while in uniform on February 11, 2016, several days after the shooting, he attempted, upon encountering Appellant, to make contact with Appellant. *Id.* at 149-150. Appellant, after noticing Officer Antoni, moved in such a way as to indicate he was going to run from Officer Antoni. *Id.* at 151. After Appellant was handcuffed, a gun was found on his person that the police seized. *Id.* at 151-152, 300. The jury heard testimony that the bullet jacket and cartridge case recovered from the crime scene showed they were fired from the same gun seized from Appellant several days later. *Id.* at 212.

Based upon a review of the record, we find the audible portion of Appellant's video interview by the police that referenced Appellant's gun related charges to be without prejudice. The record supports that the jury was aware Appellant had a gun, that he was detained by the police, that the gun was discovered on his person, and that the gun was used in the murder of Williams. Moreover, Appellant offered a self-defense explanation for the shooting.

Appellant's next objection was that the audible video interview referenced Appellant being released from prison. *Id.* at 230-231. The trial

court found this evidence to be cumulative of the testimony offered by another witness, Robert Mumma, who stated he met Appellant in prison. *Id.* at 231. A review of the notes of testimony demonstrates that Mumma stated, without objection, that he knew Appellant from seeing him in Dauphin County Prison. N.T., 1/16/19, at 74. We concur with the trial court that the audible video reference to Appellant being released from prison is cumulative of witness testimony. Therefore, Appellant's argument of prejudice is without merit.

Appellant's final objection was to police questions about whether Williams was trying to buy drugs from Appellant and if Appellant hustled in the past, to which Appellant responded in the video that he did hustle. N.T., 1/17/19, at 239. Appellant contends the reference to "hustle" meant Appellant sold drugs. *Id.* at 239-240. The trial court, unaware of this meaning of the word "hustle," stated, "I believe it's *de minimus* at most. I don't believe that the jury is prejudiced by it[.]" *Id.* at 240-241.

Mumma testified, without objection, that he knew Williams would approach cars to see if people wanted to buy drugs and that he had gotten high on drugs with Williams in the past. N.T., 1/16/19, at 70, 79. He also testified that he was in the area of the shooting that evening to purchase drugs and that this area was known for its drug activity. *Id.* at 67-68. Appellant testified that his criminal history included convictions for receiving stolen property and for theft from a motor vehicle. N.T., 1/17/19, at 291-292. Appellant's explanation of the shooting was that he shot Williams in self-defense. Appellant failed to demonstrate how the evidence of Appellant's

prior history of "hustling" or whether Williams was attempting to purchase drugs from Appellant when he approached his car prevented the jury from weighing the evidence in light of Appellant's self-defense argument and rending a true verdict. We concur with the trial court that the audible portion of the video interview concerning Appellant selling drugs in the past is *de minimus*.

Appellant failed to demonstrate that the three audible portions of the video interview prejudiced Appellant and his theory of self-defense so as to deny him a fair trial. A review of the record demonstrates that Appellant admitted to having a gun and shooting Williams and that the gun used to shoot Williams was found in Appellant's possession several days after the shooting. Eyewitness and expert medical testimony further established that Williams was outside Appellant's car and in a position of retreat at the time he was shot. Appellant's argument that these audible portions of the video interview were prejudicial is without merit.[9]

Judgment of sentence affirmed.

Judge Dubow joins.

Judge McLaughlin concurs in the result.

---

[9] Although we do not condone the Commonwealth's inadvertent failure to edit the video interview as promised in its stipulation, we likewise find that counsel for Appellant had a duty to review the video interview before it was shown to the jury.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>05/04/2020</u>