J-S11011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TAMMY LAUREN KELLOGG :
:
Appellant : No. 990 WDA 2021

Appeal from the Judgment of Sentence Entered July 14, 2021
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): CP-16-CR-0000134-2020

BEFORE: PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.: **FILED: June 6, 2022**

Tammy Lauren Kellogg appeals from the judgment of sentence imposed following her convictions for false reports to law enforcement authorities and false reports of child abuse arising out of an incident involving her grandson.[1]

On September 21, 2019, Janelle Nicole Yeany attended her 10-year-old son's ("Child") youth football game. Janelle Yeany's husband, Justin Yeany, who is also Kellogg's son, was unable to attend, and due to "an ongoing issue" with Kellogg, Justin Yeany asked Child's football coach, Nicholas Polka, to walk Child off the field after the game.

As Polka and Child exited the field toward Janelle Yeany, Kellogg moved toward Child, and Polka moved Child to place himself between Child and

_____

[1] **See** 18 Pa.C.S.A. §§ 4906(b)(1), 4906.1.

Kellogg. Kellogg shifted toward Polka's opposite side, toward Child, and Polka again moved Child.

In the month that followed, Kellogg made several lengthy postings on Facebook, claiming Polka had inserted himself in a personal matter and that she had witnessed Polka pull Child away by the shoulder pads. At least one of Kellogg's posts included a photograph of Polka and asked for anyone who could provide his name.

On November 22, 2019, Kellogg approached New Bethlehem Borough Police Officer Christopher Airgood and indicated she wanted to report an incident of assault against her grandson. In her written statement, Kellogg stated Polka "grabbed [Child] by the shoulder pads and yakked [*sic*] [Child] the whole way across in front of him." Commonwealth's Exhibit A.

After Officer Airgood completed a CY-104 form, Chief Robert D. Malnofsky, Jr., took over the investigation. Chief Malnofsky ultimately concluded no assault had taken place. When Chief Malnofsky conveyed his determination to Kellogg, she reiterated her belief that Polka had assaulted Child and stated she had law enforcement experience.

Kellogg submitted her own CY-104 form on December 9, 2019.[2] Kellogg then requested a meeting with Chief Malnofsky and the mayor; the meeting was recorded on Chief Malnofsky's body camera.

The Commonwealth subsequently charged Kellogg with falsely reporting an assault to police, and for falsely filing an allegation of child abuse on her CY-104 form. Following unsuccessful litigation of an omnibus pretrial motion and a jury trial, Kellogg was convicted of false reports to law enforcement authorities and false reports of child abuse. The trial court sentenced Kellogg to concurrent one-year probation terms. The Commonwealth filed a motion for leave to file a *nunc pro tunc* post-sentence motion and a motion to amend sentence urging the court to include a no-contact order as part of Kellogg's sentence. Kellogg also filed a timely post-sentence motion challenging the weight of the evidence. The trial court denied both the Commonwealth's and Kellogg's motions. This timely appeal followed.

On appeal, Kellogg challenges the sufficiency of the evidence supporting her convictions. Regarding both convictions, Kellogg claims she did not knowingly make false reports. **See** Appellant's Brief at 9, 14. Kellogg points

---

[2] For clarity, we note the document is titled Childline Report of Suspected Child Abuse and Neglect. **See** Commonwealth's Exhibit E. In its footer, the document is identified as a CY 47 form. **See S.M. v. Children and Youth Services of Delaware County**, 686 A.2d 872, 874 (Pa. Commw. 1996) (identifying CY-47 as a child abuse report filed with a local child welfare agency). There has been no material dispute regarding the contents or purpose of this form in this case.

to testimony by other witnesses that the coach "grabbed" Child. ***See id.*** at 10. Kellogg argues she believed the coach's action rose to the level of an assault. ***See id.*** at 11-12. Further, Kellogg asserts the police chief told her to file a CY-104 form if she was unhappy with the initial investigation. ***See id.*** at 13.

When reviewing a challenge to the sufficiency of the evidence, we "determine whether, when viewed in a light most favorable to the verdict-winner, in this case, the Commonwealth, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt." ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1290 (Pa. Super. 2018). "The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence." ***Commonwealth v. Williams***, 176 A.3d 298, 306 (Pa. Super. 2017). The finder of fact is free to believe all, some or none of the evidence presented at trial. ***See id.***

The Crimes Code provides "a person commits a misdemeanor of the third degree if he … reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur[.]" 18 Pa.C.S.A. § 4906(b)(1). Additionally, "[a] person commits a misdemeanor of the second degree if the person intentionally or knowingly makes a false report of child abuse…." 18 Pa.C.S.A. § 4906.1.

Janelle Yeany testified at trial that on September 21, 2019, she attended Child's youth football game. ***See*** N.T., Jury Trial, 6/7/21, at 47. Her husband was not able to attend the game, and due to ongoing family concerns with Kellogg, he asked Polka to walk Child off the field. ***See id.*** Janelle Yeany testified that as she waited near the concession stand, she saw Polka and Child walking toward the gate, then saw Kellogg move toward Child. ***See id.*** at 48. Janelle Yeany observed Polka move Child to his opposite side. ***See id.*** Kellogg again moved toward Child, and Polka moved Child back. ***See id.*** Janelle Yeany described these movements as "just an easy move from one side to the other. Like [Polka] wasn't pulling [Child] or yanking him." ***Id.*** at 49. She also testified that Kellogg did not raise a concern with this behavior at the time. ***See id.*** at 50. She stated that Child was not harmed in any way. ***See id.*** at 53-54.

Child testified that following his football game on September 21, 2019, he planned to walk off the field with Polka before meeting his mother. ***See id.*** at 63. When asked what happened when he walked off the field that evening, Child replied he did not remember. ***See id.***; ***id.*** at 66-67 (after reviewing his written statement, Child stated he remembered Kellogg being near the gate and Polka pulling him from one side to the other). Child testified he was not hurt, sore or bruised after that evening. ***See id.*** at 64.

Polka confirmed that the Yeanys asked him to walk Child off the field following the game and to keep Child away from Kellogg. ***See id.*** at 69. Polka testified that when he saw Kellogg, Child was walking on his left side. ***See id.***

at 70. Kellogg walked toward Polka's left side, toward Child, and Polka "brought [Child] to my right side and handed him off to [Janelle Yeany]." ***Id.*** According to Polka, he did not hear anything further until several weeks to a month later when he was asked to provide a statement to police. ***See id.***

Jared Thomas, an off-duty Pennsylvania State Police Trooper who was at the game, also observed the interaction. ***See id.*** at 74-75. Thomas testified that he had previously spoken with Janelle Yeany about an issue with Kellogg. ***See id.*** at 75. Thomas was standing at the gate after the game and observed Polka and Child walk off the field together. ***See id.*** According to Thomas, Polka placed his hand on Child's shoulder, "making sure he went on the other side of him." ***Id.*** at 76; ***see also id.*** at 75 (describing Polka positioning himself between Child and Kellogg).

Additionally, the record contains copies of Kellogg's Facebook posts about the alleged incident, which were admitted into evidence at trial. Kellogg's first two posts, published on September 30, 2019, and October 11, 2019, respectively, did not specifically allege Polka had assaulted Child. ***See*** Commonwealth's Exhibits B and C. The first time Kellogg used the term assault was in her October 23, 2019 post. ***See*** Commonwealth's Exhibit D. Kellogg described the encounter as an assault and stated that Polka "grabbed [Child] by the shoulder pads and yakked [*sic*] him behind him." ***Id.*** Kellogg also posted a picture of Polka, asked if anyone knew his name, and stated he should not be permitted to coach the following year. ***See id.***

In its Pa.R.A.P. 1925(a) opinion, the trial court concluded there was sufficient evidence to support the verdicts.[3] The trial court noted that Kellogg's written statement did not include an allegation that Polka hit Child. **See** Trial Court Opinion, 10/7/21, at 5. Yeany, Polka and Thomas each testified that Polka moved or guided Child to his opposite side but did not pull Child or use force. **See id.** at 5-6. Further, the trial court determined that Kellogg's prior law enforcement experience "shows that she knew the claim of child abuse was false." **Id.** at 7. The trial court concluded the evidence supported a finding that Kellogg knew her allegations of assault and child abuse were false. **See id.**

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, as required under our standard of review, we conclude there was sufficient evidence to support Kellogg's convictions of false reports to law enforcement authorities and false reports of child abuse. Each of the Commonwealth's witnesses described Polka escorting Child and positioning himself between Child and Kellogg. None of the evidence presented at trial indicates that Polka used any force or aggression while escorting Child off the

---

[3] In her Rule 1925(b) statement, Kellogg challenged the denial of her pretrial motions and motion for judgment of acquittal, the sufficiency of the evidence, and the weight of the evidence. The trial court deemed Kellogg's sufficiency challenge waived, describing it as a "boilerplate" claim. **See** Trial Court Opinion, 10/7/21, at 7. However, in response to Kellogg's challenge to the denial of her motion for judgment of acquittal, the trial court evaluated Kellogg's assertion that the Commonwealth failed to establish Kellogg knew the information she reported was false. **See id.** at 4-7.

field. Indeed, Child and his mother testified that Child was not hurt or bruised after this incident. Kellogg did not immediately raise any concerns or specifically allege that Child had been assaulted until her third Facebook post on October 23, 2019, and she did not report an assault to the police until two months after the incident. Finally, Kellogg's law enforcement experience could be found to imply higher sophistication in assessing the criminality of actions. Under these circumstances, a reasonable fact finder could conclude that Kellogg knowingly made false reports to both the police and the local child welfare agency.

As we find Kellogg's sole issue on appeal merits no relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/6/2022