J-A17006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICHOLAS ALEXANDER FORTUNA | : | |
| | : | |
| Appellant | : | No. 887 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 24, 2024
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-CR-0000652-2022

BEFORE: McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  September 26, 2025**

Nicholas Alexander Fortuna appeals from the judgment of sentence entered on his conviction for voluntary manslaughter. Fortuna argues that the evidence was insufficient to disprove his self-defense claim, the court erred in refusing to instruct the jury that he had no duty to retreat, and he preserved these issues for review. We affirm.

The evidence presented at Fortuna's jury trial established that four people were present on the night of the killing: (1) Fortuna; (2) the victim, Jonathan Blackburn; (3) the victim's girlfriend, Ava Psoras; and (4) their friend, Nathan Brison.

Psoras testified that the victim had a history of being violent when intoxicated, and that he physically abused her. She stated the victim "had a temper almost every time he was drinking." N.T., Trial, 11/20/23, at 160. Psoras also stated that the victim had been jailed for driving under the

influence and public intoxication. She gave several examples of the victim's violence towards others and related that he had previously jumped on the hood of her car until it dented, punched out the windshield of her car, and, on separate occasions, ripped off her car door handles. *Id.* at 166, 175-78. Brison similarly testified that the victim became violent when intoxicated, and that he abused Psoras.

While Psoras was in a relationship with the victim, she was having an affair with Fortuna. Fortuna sent text messages to Psoras, expressing his love for her and his jealousy of the victim. Fortuna told Psoras that he wanted to kill the victim for abusing her. Psoras dismissed these remarks as jokes.

Meanwhile, the victim told Psoras that if she left him, he would kill himself. He also threatened to kill Fortuna and then himself. Psoras testified that the victim had previously been admitted to a "psych ward," and that he told her it was because "he hit himself in the head with a claw hammer when his last girlfriend tried to leave him." N.T., Trial, 11/20/23, at 156.

Psoras testified to a particular incident in which she and Fortuna were sitting in Fortuna's truck while the victim tried to help pull her car out of the snow. The victim became jealous of Fortuna, approached the truck, and started screaming. The Commonwealth played a video recording of the incident, taken with Fortuna's phone, which showed the victim banging on the window of the truck. To deter the victim, Fortuna took his firearm out of the glovebox and put it on the dashboard.

On the night of the killing, May 22, 2022, the victim, Psoras, Fortuna, and Brison sat around a campfire atop a hill on the victim's family's rural property. Fortuna, the victim, and Psoras all consumed alcohol. The victim became intoxicated. The parties stipulated that the victim's blood alcohol content that night had reached 0.216, which was more than double the legal limit. The victim began arguing with Psoras. Psoras testified that they were arguing because the victim wanted her to spend the night, and she had refused. Brison testified the victim accused Psoras of cheating.

Around 10:00 p.m., the victim stormed off. Brison testified that the victim "kind of took off into the night. We had no idea where he went. He just . . . went [in] the general direction of the road to go [back down to the trailer]." N.T., Trial, 11/20/23, at 40.

Fortuna, Brison, and Psoras decided to leave. They got into Fortuna's pickup truck and drove down the hill to where Psoras's car was parked, next to a trailer home. Psoras got out of the truck and into her car. Fortuna and Brison were still inside the truck. Fortuna was in the driver's seat, and Brison was in the passenger seat. The truck's engine was running, the doors were locked, and the windows were fully closed. It was dark, and the only lights outside were the truck's headlights.

The victim emerged from behind the trailer and tried to get into Psoras's car. She would not let him in. He screamed at her.

Brison could not see the victim, but heard Psoras screaming and then yelling, "Get away." N.T., Trial, 11/20/23, at 45. Fortuna instructed Brison to

retrieve his firearm from the glove box and fire a warning shot. Brison refused to fire the warning shot, but retrieved the firearm and placed it between them on the front seat. The victim then appeared at Fortuna's window and began pounding on the glass, yelling profanities, and threatening to slash Fortuna's tires. Meanwhile, Psoras began reversing her vehicle away from the trailer so that she could drive down the driveway.

The accounts of what happened next varied slightly. According to the statement Fortuna made to the police a few hours after the incident,[1] the victim stopped pounding on the truck's window and walked away toward the rear of Fortuna's truck, with his back to Fortuna. Fortuna rolled down his window, fired a warning shot into the ground, and said, "Back off." N.T., 11/21/23, at 45-46; Commonwealth's Ex. 26; **see also** Trial Ct. Op., filed 9/19/2024, at 5. The victim lunged, putting both of his hands through the open window as Fortuna tried to roll it up, and reached for Fortuna. Fortuna fired several shots at the victim. During the interview, Fortuna maintained that he was afraid the victim was going to kill him and that he had shot the victim to save his own life. Fortuna did not testify at trial.

In contrast, Brison did not testify that the victim ever left the window, or that Fortuna rolled down the window, or that Fortuna fired a warning shot.

---

[1] Fortuna argues that we may not consider his police statement because it is not included in the certified record. **See** Fortuna's Br. at 30. However, the recording of his interview was introduced into evidence, played for the jury, and included with the trial exhibits. **See** N.T., 11/21/23, at 31-33; Commonwealth's Ex. 26.

According to Brison, while the victim was pounding on the closed window, he broke through the glass. Brison testified that the victim "reached in" and "grabbed [Fortuna] around the neck." N.T., 11/20/23, at 53. The victim then tried to choke Fortuna, and Fortuna "at some point reached and got the gun. That is whenever he pulled around and fired." *Id.* at 54.

Brison testified that he was scared that the victim had gained entry to the vehicle. At the time Fortuna shot the victim, Brison had been deciding whether he wanted to exit the vehicle and "run for it," but was hesitating because he feared that he might accidentally unlock the driver's side door. *Id.* at 84-85.

Psoras stated that once the victim approached Fortuna's truck, she could not see very well because of the truck's headlights, and because she was busy reversing her car to turn down the driveway. However, she did see the victim "doing something in the window," and saw that the victim was "in the truck." N.T., 11/20/23, at 124. Psoras's vehicle was one or two car-lengths away when she heard the shots.

The victim died at the scene. Fortuna and Brison drove down the driveway, caught up with Psoras, and told her that the victim might have been shot. Psoras drove back up the driveway, found the victim, and called 911. Fortuna and Brison returned to the scene of the shooting, and Brison attempted to administer first aid.

The first responders found the victim's body in the tall grass next to the driveway, with a boxcutter in one hand. In Fortuna's police statement, he

stated he had not seen any sort of knife or weapon in the victim's hands during the attack. Brison also testified that the victim had not been holding a weapon when he was attacking Fortuna. Brison acknowledged that the victim had been using a boxcutter earlier in the night to cut cables. Psoras testified that the victim customarily carried a boxcutter, but that she had never seen him threaten anyone with it.

The Commonwealth introduced evidence that the truck's window had been shattered while inside the door frame, *i.e.*, after it had been rolled down.[2] The Commonwealth also produced evidence that Fortuna fired two of the shots through the door of the truck, in the area containing the window panel.

The medical evidence showed that the victim had been shot five times. His hands were undamaged. The droplets of his blood which were splattered on the outside of the truck door had not been smeared. No blood reached the inside of the truck, or Fortuna's clothing. Fortuna's neck had no bruises or scratch marks.

After the close of testimony, defense counsel asked the court to instruct the jury that Fortuna had not had a duty to retreat because the victim had been wielding a deadly weapon. **See** N.T., Trial, 11/22/23, at 52-54 (citing Pennsylvania Suggested Standard Criminal Jury Instruction 9.501A). The court denied the request. The court instructed the jury on the elements of first

---

[2] There was no shattered glass on the ground outside the truck or on the floor of the truck's cabin. All the glass was found inside the door frame.

and third-degree murder, voluntary manslaughter, and self-defense. **See** N.T., Preliminary Instructions, 11/22/23, at 107-19.

The jury convicted Fortuna of voluntary manslaughter. The court sentenced him to serve 54 to 120 months' incarceration. This appeal followed.

Fortuna raises the following issues.

1. Was the issue of the requested Pa. SSJI (Crim) 9.501A waived?

2. Did the evidence presented at trial in support of the fifth condition under Pa. SSJI (Crim) 9.501A require that SSJI (Crim) 9.501A be read and that the jury be allowed to make a factual determination of whether the five Pa. SSJI (Crim) 9.501A conditions had been met, and thus the duty to retreat negated[?]

3. Was the issue of insufficiency of evidence to support a conviction of 18 Pa.C.S. § 2503 voluntary manslaughter waived?

4. Was the evidence insufficient to support a conviction of 18 Pa.C.S. § 2503 voluntary manslaughter?

Fortuna's Br. at 5 (suggested answers omitted).

Fortuna first asserts that he preserved the issue of whether the court erred in refusing his request to instruct the jury, under Suggested Standard Criminal Jury Instruction 9.501A, that he had no duty to retreat from the victim's attack because the victim had been wielding a deadly weapon. Fortuna points out that he requested the instruction in writing and the court noted an exception on the record. In its Rule 1925(a) opinion, the court agreed that Fortuna had preserved the issue at trial, but found he waived it by failing to raise it in his Rule 1925(b) concise statement. Trial Ct. Op. at 9. The Commonwealth does not argue waiver.

Issues not included in a Rule 1925(b) concise statement are waived. *See* Pa.R.A.P. 1925(b)(4)(vii). The statement must contain "sufficient detail to identify the issue[s] to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii); *see also Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa.Super. 2016) ("The Pa.R.A.P.1925(b) statement must be sufficiently concise and coherent such that the trial court judge may be able to identify the issues to be raised on appeal" (cleaned up)). "A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal." *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa.Super. 2020). However, where the statement is sufficiently specific such that we may readily distinguish the asserted errors, we will not find waiver. *See Mazurek v. Russell*, 96 A.3d 372, 377 (Pa.Super. 2014); *cf. Int. of M.G.*, 331 A.3d 703, 714 (Pa.Super. 2025) (finding issue waived where it was too vague for trial court to identify and address), *appeal denied*, No. 87 WAL 2025, 2025 WL 1376776 (Pa. May 13, 2025), *reconsideration denied* (June 24, 2025). Furthermore, each issue "will be deemed to include every subsidiary issue that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(4)(v).

Fortuna's concise statement included three issues. The second of these states as follows:

> The jury should have been instructed that [Fortuna] did NOT have a duty to retreat. In the present case, viewing the evidence carefully, [Fortuna], in fact, had NO means to retreat.

Concise Statement, 8/20/24, at 3.

We find that with the first of these two sentences ("The jury should have been instructed that [Fortuna] did NOT have a duty to retreat."), Fortuna sufficiently raised the relevant issue for appeal. The court acknowledges that during trial, Fortuna duly raised the issue of whether the court should instruct the jury under Suggested Standard Criminal Jury Instruction 9.501A that he had no duty to retreat. While the second sentence ("In the present case, viewing the evidence carefully, [Fortuna], in fact, had NO means to retreat"), when read in conjunction with the first, convolutes the meaning of the issue, we do not agree that the entire issue, as stated, was too vague for the trial court to discern, and decline to find waiver in this specific scenario.[3]

Regarding the merits of the issue, Fortuna claims the court erred in refusing his request to instruct the jury that he had no duty to retreat because the question of whether the victim had been wielding a deadly weapon during his attack was a factual question that should have been decided by the jury. He argues that the instruction is not predicated on whether the defendant saw the victim holding the deadly weapon but is warranted so long as the evidence would allow the jury to find that the victim had been displaying or using such a weapon. He argues that here, the instruction was supported by the testimony that the victim had been using a boxcutter earlier in the evening,

_____

[3] Regarding whether the court should have instructed the jury that Fortuna had no **means** to retreat, the court found this issue waived because Fortuna did not raise it during trial. Trial Ct. Op. at 7. We need not address this issue, or its waiver, because Fortuna does not argue on appeal that the court should have instructed the jury that he had no means to retreat.

had threatened to slash Fortuna's tires, and was found holding the boxcutter after he died.

A jury instruction must be supported by the trial evidence, and a criminal defendant "may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Commonwealth v. Taylor*, 876 A.2d 916, 926 (Pa. 2005). The evidence supporting an instruction may come from any source. *Commonwealth v. Cannavo*, 199 A.3d 1282, 1287 (Pa.Super. 2018). Whether the evidence supports a certain self-defense instruction is a matter of law. *Id.*

The Suggested Standard Jury Instructions are not binding, but are meant to guide the trial court in instructing the jury on the applicable legal principles. *Commonwealth v. Eichinger*, 108 A.3d 821, 845 (Pa. 2014). Suggested Standard Criminal Jury instruction 9.501A states, in relevant part, "A defendant is not obligated to retreat from the place where he or she is attacked if . . . [t]he person against whom the defendant uses force displays or otherwise uses a firearm or any weapon readily or apparently capable of lethal use." Pa.S.S.J.I. (Crim.) 9.501.A(2)(c)(iii)(E).

This instruction was drawn from Section 505 of the Crimes Code, as amended in 2011. *See* Pa.S.S.J.I. (Crim.) 9.501.A, Subcommittee Note. That statute, titled "Use of force in self-protection," codifies self-defense. It places restrictions on the use of force in self-defense, including that the use of such force is not justifiable if "the actor knows that he can avoid the necessity of using such force with complete safety by retreating[.]" 18 Pa.C.S.A. §

505(b)(2)(ii). However, the statute provides several exceptions to the duty to retreat, including when the victim "displays or otherwise uses . . . any . . . weapon readily or apparently capable of lethal use":

> (2.3) An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:
>
> > (i) the actor has a right to be in the place where he was attacked;
> >
> > (ii) the actor believes it is immediately necessary to do so to protect himself against death, serious bodily injury, kidnapping or sexual intercourse by force or threat; and
> >
> > (iii) **the person against whom the force is used displays or otherwise uses:**
> >
> > > (A) a firearm or replica of a firearm as defined in 42 Pa.C.S. § 9712 (relating to sentences for offenses committed with firearms); or
> > >
> > > (B) **any other weapon readily or apparently capable of lethal use.**

18 Pa.C.S.A. § 505(2.3) (emphasis added).[4]

Here, the trial court found the instruction unwarranted because there was no evidence that the victim had "displayed" or "used" a weapon. Trial Ct. Op. at 8. We agree that, as a matter of law, the trial evidence did not support the instruction. Although a boxcutter was found in the victim's hand after he

---

[4] This subsection is "commonly referred to as a 'stand your ground' law[.]" ***Commonwealth v. Childs***, 142 A.3d 823, 831 n.11 (Pa. 2016); ***see also Commonwealth v. Smith***, 97 A.3d 782, 787 n.2 (Pa.Super. 2014). It was included in the 2011 amendments to Section 505, intended to broaden the right to self-defense. ***Childs***, 142 A.3d at 829 n.14.

died, neither Brison, Psoras, nor Fortuna saw the victim display or use a weapon before, during, or after the attack. ***See Commonwealth v. Fetters***, 241 A.3d 359, 2020 WL 5870282 (Pa.Super. filed Oct. 1, 2020) (unpublished memorandum) (finding "stand your ground" instruction unwarranted where defendant conceded to police that victim did not have a weapon during the altercation). We disagree with Fortuna's argument that he need not have been aware of the weapon. According to the text of the statute, it is the victim's "display" or "use" a deadly weapon that triggers the defendant's right to stand his ground.[5]

Fortuna next argues that he preserved the issue of whether the evidence was sufficient to overcome his self-defense claim. The court found this issue waived because Fortuna's concise statement did not specify which element of his manslaughter conviction was unsupported by sufficient evidence, although the court considered a "generous interpretation" of Fortuna's sufficiency claim was that it went to the elements of his self-defense claim. Trial Ct. Op. at 3-4.

When challenging the sufficiency of the evidence, the appellant's concise statement must specify which elements of the crimes for which he was convicted were allegedly unsupported by sufficient evidence.

---

[5] Fortuna further asserts the court's failure to give the instruction caused him prejudice, because during deliberations, the jury asked the court, "If the defendant has the opportunity to leave and does not can it still be manslaughter[?]" ***See*** Fortuna's Br. at 26. However, as we find the court did not err in refusing the instruction, we need not conduct a harmless error analysis.

*Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009). "Such specificity is of particular importance in cases where . . . the [a]ppellent was convicted of numerous crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* A blanket or boilerplate statement declaring the evidence insufficient to convict the defendant of multiple charges lacks sufficient specificity to preserve the issue for review. *Bonnett*, 239 A.3d at 1106; *see also Commonwealth v. Rivera*, 238 A.3d 482, 496 (Pa.Super. 2020) (finding sufficiency issue waived where appellant was convicted of multiple offenses containing multiple elements but appellant's concise statement included only a combined boilerplate sufficiency and weight claim); *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa.Super. 2015) (finding sufficiency issue waived where appellant's concise statement "simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

The "First Issue" of Fortuna's concise statement begins, "The first issue is that there was insufficient evidence to support a conviction of voluntary manslaughter, 18 Pa.C.S. § 2503(b)." Concise Statement at 1. Fortuna then proceeds to compare the facts of his case to those of *Commonwealth v. Johnston*, 263 A. 2d 376 (Pa. 1970), another self-defense case, including whether the victim threatened a third party, whether the victim was wielding a weapon, whether the defendant fired a warning shot, and whether the defendant had the means to retreat. Fortuna's concise statement asserts that the evidence in his case suggested he had "a right to use deadly force in self[-

]defense," because the victim was wielding a boxcutter and charged at Fortuna in the face of a warning shot, Fortuna did not provoke the incident, and Fortuna had no means to retreat. Concise Statement at 1-3.

We decline to find waiver. Fortuna was convicted of only one crime: voluntary manslaughter. While his concise statement is far from a perfect example of brevity, it adequately explains that Fortuna's challenge is to the evidence disproving each element of his self-defense claim. This was not a vague, barebones or boilerplate challenge to the sufficiency of the evidence, so lacking in specificity as to constitute waiver.

We apply the following standard of review to a sufficiency challenge:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Jones***, 271 A.3d 452, 457-58 (Pa.Super. 2021) (citation omitted) (alternation in original).

- 14 -

As stated above, Section 505 of the Crimes Code codifies the justification defense of self-defense, which provides a complete defense to criminal liability. *See* 18 Pa.C.S.A. § 502. Section 505 states,

**(a) Use of force justifiable for protection of the person.--** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.--**

. . .

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505(a), (b)(2).

Thus, a successful self-defense claim must assert:

1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm;

2) the defendant did not provoke the threat that resulted in the slaying; and

3) the defendant did not violate a duty to retreat.

*Jones*, 271 A.3d at 458. Once the defendant has claimed self-defense, "the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent." *Id.*

However, if the Commonwealth fails to disprove the second and third elements, but successfully disproves that the defendant reasonably believed that it was necessary to use deadly force, "the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense." *Id.*; *see also Commonwealth v. Rivera*, 108 A.3d 779, 787 n.2 (Pa. 2014). The crime of "unreasonable belief" voluntary manslaughter is codified in Section 2503 of the Crimes Code, which states,

> **(b) Unreasonable belief killing justifiable.--**A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503(b).[6]

Fortuna argues the Commonwealth failed to disprove the elements of his self-defense claim beyond a reasonable doubt. However, the jury convicted Fortuna of unreasonable belief voluntary manslaughter. Therefore, the jury found, in Fortuna's favor, that the evidence did not disprove beyond a

---

[6] There is no contention that Fortuna was convicted under Section 2503(a), which provides for a voluntary manslaughter conviction when the defendant was "acting under a sudden and intense passion resulting from serious provocation." 18 Pa.C.S.A. § 2503(a).

reasonable doubt that he had not provoked the victim's attack, or that he had not violated a duty to retreat. *See Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012) (stating that to succeed on an imperfect self-defense claim and receive a conviction for unreasonable belief voluntary manslaughter, all other principles of justification under Section 505 must be met); *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa.Super. 2012). We therefore need not address these latter elements of Fortuna's self-defense claim. The only remaining question is whether the Commonwealth's evidence was sufficient to disprove that Fortuna reasonably believed that his use of deadly force was immediately necessary to protect himself against death or serious bodily injury.

Fortuna asserts that the evidence did not disprove that his belief was reasonable because the victim, who had a history of violence when drinking and was armed with the boxcutter he had been using earlier in the evening, suddenly emerged from the darkness and began banging on Fortuna's window, shouting profanities, and threatening to slash Fortuna's tires. After hearing a warning shot, the victim broke through the truck's window and began strangling Fortuna. Fortuna claims that had he not shot the victim, he "would probably now be dead." Fortuna's Br. at 33.

> The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable

in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

***Commonwealth v. Smith***, 97 A.3d 782, 787 (Pa.Super. 2014) (quoting

***Commonwealth v. Mouzon***, 53 A.3d 738, 752 (Pa. 2012)).

Although the jury is not required to believe the defendant's self-defense claim, the Commonwealth may not rely solely on the jury's disbelief of the defendant's testimony, but most present some other evidence that the defendant did not reasonably believe that the use of deadly force was necessary. ***Id.*** at 788. The Commonwealth may provide evidence on "[a] number of factors, including whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident[.]" ***Id.*** at 788. The Commonwealth may also disprove the self-defense claim by proving the defendant "used more force than reasonably necessary[.]" ***Id.*** (citation omitted).

When viewed in the light most favorable to the Commonwealth, the evidence was sufficient to disprove that Fortuna subjectively believed he needed to use deadly force to save himself from death or serious bodily injury, or that his belief and resulting use of force was reasonable. The Commonwealth presented evidence that Fortuna was romantically involved with the victim's girlfriend and had stated a desire to kill the victim. While the victim was frequently violent and abusive, he had not verbally threatened to hurt Fortuna, and to Fortuna's knowledge, the victim did not attempt to use

- 18 -

any weapon during the attack. By Fortuna's own account, the victim did not shatter the truck's window prior to attacking Fortuna.[7] Rather, Fortuna chose to roll it down and fire a warning shot during the victim's retreat. Although the victim reached for Fortuna through the truck's window, he did not injure his own hands or Fortuna's neck. When Fortuna shot the victim, the victim was at such a distance that no blood spatter got on the outside of the truck, and no blood reached Fortuna's clothes or the inside of the truck.

This evidence was sufficient for the jury to find, beyond a reasonable doubt, that Fortuna's alleged belief that he needed to shoot the victim five times, from his position inside the truck, either was not a bona fide belief subjectively held by Fortuna, or was, objectively, greater force than was reasonably necessary. *See Commonwealth v. Kennedy*, 332 A.3d 133, 143 (Pa.Super. 2025) (finding Commonwealth presented sufficient evidence to disprove self-defense where defendant used more force than necessary).

Judgment of sentence affirmed.

---

[7] While this point differed from Brison's testimony, the fact that the window had been rolled down was corroborated by the evidence regarding the window glass, bullet trajectory, and lack of injuries on the victim's hands. Regardless, we view the evidence in the light most favorable to the Commonwealth.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  09/26/2025